## GROSS v. KATHAIRO CHEMICAL CO.

(Supreme Court, Appellate Division, Second Department. June 18, 1908.)

1. APPEAL AND ERROR—REVIEW—AMENDMENTS REGARDED AS MADE.

Though a cause for the discharge was not pleaded as a defense to the action by an employé for the discharge, yet the question of the existence of the cause having been litigated without objection, and no point being made on appeal that the defense was not pleaded, judgment for plaintiff will be reversed; the evidence establishing the defense.

2. MASTER AND SERVANT—DISCHARGE—FAILURE TO PERFORM DUTIES—EVIDENCE.

Evidence in an action based on wrongful discharge of plaintiff from defendant's employ *held* to show that there was not a reasonable performance of plaintiff's agreement to devote his entire time and undivided attention to the service of defendant, and diligently and faithfully serve it.

Appeal from Trial Term, Kings County.

Action by Frank Gross against the Kathairo Chemical Company. From so much of the judgment as awarded plaintiff any sum in excess of $109.72 and costs, and from two orders denying motions for new trials, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

A. S. Gilbert (Julius M. Mayer, on the brief), for appellant.
Albert Tameling, for respondent.

MILLER, J.   I think that upon any reasonable view of the evidence
the defendant was justified in discharging the plaintiff from its employ-
ment, and that the complaint should have been dismissed as to the first
cause of action.   Jerome v. Queen City Cycle Co., 163 N. Y. 351, 57
N. E. 485.   While the cause for the discharge was not pleaded as a
defense, the question was litigated without objection, and the respond-
ent on this appeal makes no point that the defense was not pleaded.

The plaintiff was employed in the capacity of salesman and general
manager of the defendant's sales department for the metropolitan dis-
trict.   The written contract of employment provided, inter alia, as fol-
lows:

"Second. The said party of the second part hereby agrees to enter into such
employment, and agrees to devote his entire time and undivided attention
thereto, and diligently and faithfully and to the best of his ability, serve the
said party of the first part, and he hereby agrees to conform to all reasonable
directions, instructions, and requirements, that may from time to time be
given him by said party of the first part."

The plaintiff evidently interpreted that clause to mean that he was
not to be engaged in any other business.   The defendant, becoming
suspicious that the plaintiff was not attending to his duties, had him
shadowed by detectives, and learned that he and a fellow salesman in
the defendant's employ, one Rosenstock, were together much of the
time during the forenoons, and that they invariably went to a café at
724 Broadway soon after 12 o'clock, and, after lunching, spent the
afternoons there together playing cards and shaking dice, on different
occasions remaining there until nearly 5 o'clock, when they would re-
turn separately to the defendant's office, evidently to create the im-
pression that they had not been together.   Said detectives testified on
the trial to what they discovered, and the plaintiff did not dispute it.
He explained the fact that he always went to 724 Broadway for lunch,
no matter in what part of the city he happened to be, by saying that
it was a good place to lounge.   He tried to account for being so much
in the company of Rosenstock, even during the forenoons, by the fact
that his duties as manager of the sales department required him to
instruct new or inexperienced men, and to assist them with their cus-
tomers.   The plaintiff's duties were to solicit business himself and to
have general supervision of three or four other salesmen; but it is
undisputed that Rosenstock had his own customers, was an experienced
salesman, and did not require the plaintiff's assistance.   The subter-
fuge that the plaintiff and Rosenstock went to said café to meet cus-
tomers and remained there during the afternoon for the purpose of
entertaining them is too palpable to be considered seriously, and the
lame excuse of the plaintiff that he usually got tired at about 12 o'clock,
and that he averaged through the year about two hours for lunch,
should not be suffered to impose upon our credulity.   Of course, a sales_
man must be allowed reasonable latitude.   He has to adjust his time
to suit the convenience of his customers, but the evidence in the record
before us presents a plain case of conscious shirking of duty.   The

defendant did not employ the plaintiff to spend his time in the company of Rosenstock, visiting a few customers during the mornings and playing cards in a saloon during the afternoons; and a jury should not have been permitted to say that that course of conduct was a reasonable performance of an agreement to devote his entire time and undivided attention to the service of the defendant and diligently and faithfully to serve it.

The judgment in so far as appealed from should be reversed.

Judgment in so far as appealed from and orders reversed and new trial granted, costs to abide the event. All concur.