(156 App. Div. 329.)
WILLIAMSON v. AMERICAN FOIL CO.

(Supreme Court, Appellate Division, Second Department.    April 30, 1913.)

1. APPEAL AND ERROR (§ 1001*)—VERDICT—EVIDENCE.
     Where, in an action for damages for breach of an employment con-
     tract, the evidence warranted submission to the jury of the question
     whether the defendant employer was justified in discharging plaintiff, a
     verdict for plaintiff could not be disturbed on appeal.
     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922,
     3928–3934;  Dec. Dig. § 1001.*]

2. MASTER AND SERVANT (§ 30*)—EMPLOYMENT CONTRACT—DUTIES OF EM-
     PLOYÉ.
     A person engaged under a four-year contract as general manager of
     the manufacturing and credit departments of a business was required
     to be competent, loyal, and obedient to lawful and reasonable direc-
     tions of his employer, and to faithfully give his time in business hours
     to his employer's business, but was under no implied obligation to
     assure success.
     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
     30–36;  Dec. Dig. § 30.*]

3. MASTER AND SERVANT (§ 43*)—EMPLOYMENT CONTRACT—CONSTRUCTION—
     QUESTION OF LAW.
     In an employé's action for breach of his written employment contract,
     the question whether such contract imposed any affirmative obligation
     upon plaintiff in relation to the sales branch of the defendant's business
     was exclusively for the court.
     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 57,
     58;  Dec. Dig. § 43.*]

4. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES.
     The submission to the jury of a question of law which they rightly
     decided was not ground for reversal.
     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–
     4218;  Dec. Dig. § 1062.*]

Appeal from Trial Term, Kings County.

Action by Charles H. Williamson against the American Foil Com-
pany. From judgment for plaintiff and denial of a new trial, defend-
ant appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, RICH,
and STAPLETON, JJ.

James M. Hunt, of New York City (George W. Elkins, of New
York City, on the brief), for appellant.

Edward Stetson Griffing, of New York City, for respondent.

STAPLETON, J.    The plaintiff brought this action to recover
damages for a breach of a contract of employment, alleging a wrong-
ful discharge by the defendant before the expiration of the term fixed
in the contract. The jury rendered a verdict for the plaintiff in the
sum of $7,500, and no complaint is made of the size of the verdict,
nor is error assigned regarding the rule given to the jury for the as-
certainment of the damages.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The appellant insists that it was justified in discharging the plaintiff because of his incapacity. The specifications upon which this claim is based, as disclosed by the answer, are:

"Because of his failure to maintain proper discipline and supervision over the employés of the defendant who were under the supervision and control of the plaintiff; and because of the fact that plaintiff so conducted himself as to lose the respect of his subordinates in said business and the operatives in defendant's factory; and because of plaintiff's failure to give such proper attention to the management and direction of the defendant's business as was necessary to institute a proper organization of the business and property of the defendant; and because of plaintiff's failure to institute and effect any reasonable method of ascertaining the cost of the product manufactured by defendant by reason of which the product so manufactured by defendant was sold under the direction of the plaintiff at a large margin of loss to the defendant; and because of plaintiff's failure to give to the salesmen of defendant any proper instruction as to prices and terms upon which the product of the defendant's factory might be sold; and because of the plaintiff's accepting orders for goods manufactured by the defendant at prices much below the real cost of production thereof; and because he so carelessly and recklessly managed said business that plaintiff lost over $6,500 during the months of July, August, and September, 1910; and because of such lack of attention to said business on the part of plaintiff that he was unaware of said loss, and was unable and unwilling to make any suggestion to the officers or directors of the defendant as to how such losses occurred, and how they might be avoided in the future; and because of plaintiff's unwillingness to counsel and advise with the officers and directors of the defendant in regard to the interest of the defendant in and about said business; and because plaintiff neglected and refused to sell or endeavor to sell the product of defendant's factory claiming that such was not one of his duties to the defendant under his contract, although plaintiff was requested so to do by the president of the defendant."

On November 17, 1909, a contract in writing was signed by the Chicago Tin Foil Manufacturing Company, a corporation, as party of the first part, the plaintiff as party of the second part, and certain other individuals as parties of the third part. The purposes of the contract are declared in express terms as follows:

"Whereas, the said party of the first part desires to reorganize its business and enlarge its capital stock; and whereas, the said party of the first part, desires to employ the party of the second part as its general manager to have complete control and charge of its manufacturing plant and business, subject, however, to the directions, order and approval of the board of directors; and whereas, said party of the second part, who has heretofore been the assistant superintendent of the United Cigar Stores Company, which position he is about to resign, because of the promises and conditions assumed by the parties of the first part and of the third part, respectively, to enter the employ of said party of the first part, provided, however, that the business of said party of the first part is reorganized and its capital stock is enlarged, and further provided that the performance of the terms and the conditions of this agreement are guaranteed by the party of the third part; and whereas, each and all of the party of the third part desire that said party of the second part, shall enter the employ of the party of the first part, and desire to guarantee the full performance of the terms and conditions of this agreement, unto said party of the second part."

The contract provided:

"And the said party of the first part further agrees that it will employ the said party of the second part for a period of five years, beginning from December 1, 1909, and terminating November 30, 1914, as its general manager, and as such general manager it will give unto said party of the sec-

·ond part, the power to employ and discharge help, to fix the salary of such help, to buy and sell machinery materials, goods, wares and merchandise, to arrange for the terms of credit, and to be in complete control and in charge ·of and at the head of all the departments of the manufacturing plant of said reorganized corporation, subject at all times, however, to the directions, ·order and approval of the board of directors of the said party of the first part. But this condition and promise shall not be construed as giving to said party of the second part, any control of the finances of said reorganized ·corporation.

"And the said party of the first part further agrees that it will pay, in equal monthly installments, unto said party of the second part, the sum of $4,000.00 per annum, as and for his compensation as the general manager of said reorganized corporation.

"And the said party of the first part further agrees that in addition to the said payment of $4,000.00 per annum, it will pay unto said party of the :second part 10% of the net profits or net earnings of the business of said reorganized corporation, for each and every year ending on December 1st, as shown upon the books of said corporation. But the said party of the second part agrees that said ten per cent. (10%) of the net profits or net earnings, as well as the dividends, if any, on the said stock held in escrow, shall be retained by said corporation and applied on the payments of the said one hundred shares of the capital stock of said corporation held in ·escrow, as hereinbefore set forth. After said capital stock has been entirely paid for as herein provided, the 10% net profits or earnings hereinbefore provided for, shall be paid to said party of the second part.

"And in consideration of the premises, and the promises, conditions, terms and acts herein provided, the said party of the second part agrees to enter the employ of the said party of the first part for a term of five years as hereinbefore provided and upon conditions already stated.

"And the said party of the second part agrees, during the continuance of this agreement to give to said party of the first part, his whole time and attention. That during the continuance of this agreement, he will not either directly or indirectly work, be employed or assist in any other trade, ·occupation or business, whether the same be individual, partnership or corporate, or whether the same belong to himself or any other person, persons ·or corporation. But during the continuance of this agreement, said party of the second part, agrees to work exclusively for the said party of the first part and use his best efforts to further the interests and business of said party of the first part."

The new corporation was formed under the name of the defendant and it assumed the obligation of the employer under the contract. The plaintiff entered upon the duties of his employment. on the 1st day of December, 1909, and he was discharged on the 27th day of October, 1910.

[1] The evidence establishes that certain individuals who were parties to the contract were stockholders in a corporation that was engaged in establishing a tin foil business. The plant of the company was in the city of Chicago. The enterprise was not successful. It was determined that the engagement of a practical man would convert failure into success. In July, 1909, the plaintiff was presented to the attention of some of the officers of the company. He was then ·engaged in another line at a salary of $3,000 per annum. He had experience in the tin foil business. He was induced to visit the plant in Chicago, and thereafter determined that he did not wish to make the venture. Negotiations were resumed between him and the directors of the company and the contract was the result. The officers of the company were obviously impressed with the desirability of pro- ·curing his services, as the provisions of the contract were specially

favorable to him. The individual contractors obligated themselves to guarantee the performance of many of its essential provisions. The plant was removed to New York in compliance with his request, and matters proceeded without friction until about a week before the plaintiff's discharge. The books of the defendant were submitted to an audit company, which reported that from the 1st day of July, 1910, to the 1st day of October, 1910, there was, according to the books, a financial loss of .$6,850.90, and a loss of $4,475 during the six months next preceding July 1, 1910, while the company was removing from Chicago to New York. The loss for one year, under a previous management, had been only $4,310.44.

Plaintiff claimed that the findings, if at all important, were made upon data in relation to inventories assumed to be correct, and disregarded labor utilized in experiment, equipment, betterment, and not in production.

[2] The presentation of the report is the point at which the relations of the parties began to sever and the justifications or pretexts for the plaintiff's discharge accumulated. There was some evidence that his refusal or neglect to interest a wealthy relative in the enterprise was an important circumstance at this stage of the difficulties between the parties. We think it was a question for the jury to determine whether the facts upon which the claim of justification is based existed, and that upon the evidence, if the law was correctly stated, their verdict should not be disturbed. The plaintiff was required to be competent, and reasonably to perform his agreement. He was obliged to be obedient to lawful, reasonable, and fair directions of his master. It was his duty to be loyal to the interests of his employer and faithfully to give his time, in business hours, to the promotion of his employer's business. Jerome v. Queen City Cycle Co., 163 N. Y. 351, 57 N. E. 485; Gross v. Kathairo Chemical Co., 127 App. Div. 165, 111 N. Y. Supp. 481; Costet v. Jeantet, 108 App. Div. 201, 95 N. Y. Supp. 638; Allen v. Glen Creamery Co., 101 App. Div. 306, 91 N. Y. Supp. 935; Deane v. Cutler (Super. Buff.) 20 N. Y. Supp. 617. He gave no express assurance that he could command success. He was under no implied obligation to assure it. Financial success in business is dependent upon a variety of circumstances, and an employer must protect himself from unsatisfactory results of a business venture by the exercise of foresight in entering upon contracts of employment.

The case was submitted to the jury, who were instructed in a charge which accurately stated the law and to which no exception was taken by the defendant. The defendant presented to the court twelve requests to charge, three of which were granted. The exceptions to refusals to charge some of the other requests present a serious question for our consideration.

[3] The court, in disposing of some of the requests, laid upon the jury the duty of construing the contract as to whether the terms imposed any affirmative obligation upon the plaintiff in relation to the sales branch of the defendant's business. There were certain claims of dereliction or failure of duty if it were held that an obligation was assumed by the plaintiff, under the contract, as to the sales department.

It must be conceded that the question of the construction of the contract was exclusively for the court. Jerome v. Queen City Cycle Co., supra. We think, however, that by a proper construction of the contract the duties of the plaintiff were to be performed solely in connection with the manufacturing department of the defendant's business except as to arrangements for terms of credit. In connection with the duty relating to credit no dereliction was alleged or proven.

[4] We determine that, although a question of law was submitted to the jury, it was rightly decided, and therefore no ground for reversal is afforded. Ming v. Corbin, 68 Hun, 161, 22 N. Y. Supp. 647, affirmed 142 N. Y. 334, 37 N. E. 105.

The other requests to charge which were declined or modified either assumed facts for which there was no basis in the evidence, or presented unsound propositions of law, and no error was committed by the court in its disposition of them.

Judgment and order affirmed, with costs. All concur.