Henry Epstein, J.
In this action plaintiff corporation seeks an injunction against the corporate and individual defendants, as well as an accounting and damages. Plaintiff corporation, operated chiefly by husband and wife, furnishes household services of maids, cooks and special servants for express occasions. The help are paid by plaintiff and the costs are billed to the customers by plaintiff. Customers are apartment and home *274 owners in Manhattan, who generally do not have “ in-servants ” living in the household. Defendant Jerrold K. Taylor is related to the owners of plaintiff and with defendant Holmes (Gritlin) were employed by plaintiff since at least 1951. Until their dismissal in October, 1959, these two were the mainstay of an office staff of some six. J. C. Taylor and his wife were two whose functions covered the actual direction of the business, hiring the domestic help for the customers and bonding them as security for those customers. There are probably some six other “ services ” in the city, among which the better known are Budge-Wood (both former tennis champions), Plaintiff began operating in or about 1946 and developed a customer clientele of some 225 and an employee pool of 70 (40 maids and 30 special employees).
Early in October, 1959, defendant Jerrold Taylor was dismissed with a two weeks’ notice. Shortly .thereafter defendant Gritlin was summarily dismissed. After seeking other jobs and advertising for employment, the individual defendants created defendant corporation “Maids Unlimited, Inc.” in November, 1959, and commenced a business in competition with plaintiff in January, 1960. The individual defendants had no written contracts with plaintiff, were employees at will, and for some eight years had been intimately associated with plaintiff’s business, Imew the employee pool personally and there was no known or express secrecy in plaintiff’s customer lists and customers were billed at regular monthly or more frequent intervals for the services rendered of the maids, cooks, cleaning help or others as needed. Such lists were discarded when each new listing for billing was prepared. From the evidence the court can only conclude that no pledge or obligation of secrecy or confidence was exacted with respect to such lists. Nor is there any reason. for the court to conclude that defendants, secretly or otherwise, took such information from plaintiff at the time of their dismissals. The typewritten copy of names of customers found in the vacated desk of defendant Gritlin had been prepared more than a year before in answer to a request for such information by the bonding company in order to have full coverage. This list had been introduced as proof that defendants had made a list of employees for future use and to lure them from plaintiff. The answering testimony constitutes a complete refutation of this and other implications of improper conduct by defendants.
Practically all the important paper work, records, bookkeeping, etc., were handled by defendants Gritlin and Taylor. . On setting forth on their own and in competition with plaintiff corporation, defendants sent notices of their new venture to *275 employees of plaintiff, to a host of prospective customers, derived from study of voting registries, commercial and apartment house residents, carefully prepared by defendant G-itlin after leaving plaintiff’s employ and the joint decision of defendants to enter the business of their former employer. They had also, as in prior years, sent Christmas greetings to employees and customers. In 1959 defendants sent joint Christmas greetings. This court can draw no invidious conclusion from the defendants’ conduct after having been dismissed from plaintiff’s employ. The facts of this case are not too different from those in Apollo Stationery Co. v. Pilmar (15 Misc 2d 91, unanimously affd. 9 A D 2d 649). If anything, the instant case presents a stronger case for defendants. The principle is too well-established that “mere solicitation does not constitute unfair competition in the absence of an express agreement to the contrary.” (Standard Lib. v. Addis, 167 Misc. 469, 471.) Nor is there any contrary result observed in the cases cited by plaintiff. Town & Country House & Home Serv. v. Newberry (3 N Y 2d 554) and Duane Jones Co. v. Burke (306 N. Y. 172) are readily distinguishable. In the latter there was a clear breach of a fiduciary obligation in soliciting customers while in the employ of the principal. In Town & Country the only customers solicited were those of the former employer and that was a unique compilation. Defendants have procured some 130 total of customers with less than one fourth derived from th.ose formerly dealing with plaintiff. Employing the research as testified by defendant Gitlin anyone, including plaintiff, has access to the sources of customers from which defendants procured its prospective customers. The telephone directory, “ Reverse Directory ”, “ Analysis of Specific Addresses ”, voting lists, etc. are available to all who desire to work out such lists. Knowledge, experience, and skills cannot be subject to injunction when not utilized unlawfully. No legal wrong has been done plaintiffs who did not see fit to utilize a written employment agreement in which such protection could have been provided. Negative covenants are not favored by the courts where no trade secrets or unusual skills are involved (Edward Brown, Inc., v. Astor Supply, 4 A D 2d 177).
There is no moral standard violated by employees, fired by their employers, engaging in a competitive enterprise, where no restrictive covenant is involved. Plaintiff here seeks to escape the hazard of competition without a restrictive contract which it was free to exact but saw fit not to require of defendant employees. Nor do the letters asking employees to “ stop in and say hello ” constitute any actionable wrong. We find here *276 no conspiracy, no breach of confidence, no restrictive covenant, no theft of secret information. The courts do not restrict free-. dom of trade and competition, absent the foregoing wrongful act. Findings and conclusions having been waived, judgment is rendered for defendants. Complaint dismissed, with costs.