Walter J. HAGGERTY, Jr., Plaintiff,

v.

BURKEY MILLS, INC., Defendant.

No. 62 C 1124.

United States District Court
E. D. New York.

Nov. 28, 1962.

Irving Fliegler, New York City, for plaintiff.

Manning, Hollinger & Shea, New York City, for defendant; William Schurtman, New York City, of counsel.

ZAVATT, Chief Judge.

This action was removed to this court from the Supreme Court, Queens County, New York, because of the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332(a) (1). The briefs of the parties indicate that the substantive law of New York State governs.

The plaintiff sues to recover commissions allegedly due under an oral contract of employment entered into on or about January 1, 1962 between the plaintiff, a salesman, and the defendant, a manufac- turer of knitwear and underwear. The complaint does not plead an employment contract of definite duration. It alleges in substance that plaintiff was employed as a salesman to procure orders for goods manufactured by the defendant and that the latter agreed to pay for such services a commission of 2% of the aggregate price of all such goods shipped by the defendant to purchasers procured by the plaintiff; that against commissions so earned plaintiff was entitled to a weekly drawing of $200. The complaint alleges that, between January 1, 1962 and March 12, 1962, plaintiff earned total commissions of $19,782.10; that he has been paid only $1,800 on account thereof and that there is due and owing to the plaintiff by the defendant the sum of $17,982.10.

The defendant pleads its version of the agreement in paragraph "2" of its answer, wherein it alleges that the parties entered into an oral contract for the term of one year "at a salary of $10,000 for the entire year, payable in equal monthly installments, plus 2% of the aggregate price of goods actually shipped on plaintiff's orders in excess of $500,000, * * *." Defendant denies that orders obtained by plaintiff exceeded $500,000 and contends, therefore, that the 2% formula never became operative. It alleges several breaches of the agreement by the plaintiff, hereinafter referred to; asserts four affirmative defenses, two counterclaims and demands judgment against the plaintiff in the sum of $50,000 for damages allegedly sustained by the plaintiff because of certain of plaintiff's breaches of said contract. In addition, defendant seeks judgment in the further sum of $2,307.66, the amount of compensation paid by defendant to plaintiff prior to plaintiff's breaches of the contract. Defendant also seeks a permanent injunction restraining plaintiff from soliciting its customers and an accounting.

The plaintiff moves, pursuant to Fed. R.Civ.P. 12(f), to strike the fourth affirmative defense and, pursuant to Rule 12(b) (6), to dismiss the two counter-

claims asserted by the defendant. The fourth affirmative defense is to the effect that the plaintiff, while in the defendant's employ, "attempted to persuade other salesmen of the defendant to join him in leaving the defendant's employ" (paragraph 17 of the answer), and that the plaintiff, after leaving defendant's employ, "solicited customers of the defendant" in violation of the contract of employment (paragraph 18 of the answer). Defendant alleges that because of these breaches plaintiff "is not entitled to any compensation".

### The Fourth Affirmative Defense

■ As to that portion of the fourth affirmative defense set forth in paragraph 17 of the answer, the motion is denied. Plaintiff contends that this defense is insufficient because it fails to allege that any employee left the employ of the defendant because of the plaintiff's alleged attempts to persuade employees to do so. Nevertheless, this defense, if proven, might prevent recovery by the plaintiff. It is well settled that an employee owes a duty to his employer to be loyal to his interests and faithfully to devote his time to the promotion of his employer's interests. Demonstrated disloyalty may constitute a breach of contract of employment. Williamson v. American Foil Co., 156 App.Div. 329, 141 N.Y.S. 405 (2d Dept. 1913); Williston, Contracts § 1022. Although disloyalty, such as is pleaded by the defendant, must amount to more than mere idle talk, Day v. American Machinist Press, 86 App.Div. 613, 83 N.Y.S. 263 (1st Dept. 1903); H. & S. Mfg. Co. v. Benjamin F. Rich Co., 181 A.2d 431 (Del.Ch.1962), it cannot be said that demonstrated disloyalty constitutes a breach of a contract of employment only when the disloyal objective is achieved. See A. S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E. 2d 371 (1957).

■ As to that portion of the fourth affirmative defense pleaded in paragraph 18 of the answer, the motion is granted. This affirmative defense is also pleaded as a part of the first counterclaim. It is not properly an affirmative defense, since it relates to matters which allegedly transpired after the alleged breach of contract. The answer does not allege that the contract of employment included an agreement on the part of the plaintiff not to solicit customers of the defendant.

### The First Counterclaim

■ The first counterclaim is based upon the same contentions set forth as defenses in paragraphs 17 and 18 of the answer, i. e., attempts to induce other employees to leave the defendant's employ and plaintiff's solicitation of defendant's customers after he left its employ. The motion to dismiss the first counterclaim is denied.

■ There may be prima facie liability for interference with contractual relations, short of actually inducing others to breach their contracts of employment, by acts which make performance of a contract more burdensome, difficult or impossible, and render performance of less or no value to the party thereto entitled to performance. De Jur-Amsco Corp. v. Janrus Camera, Inc., 16 Misc.2d 772, 155 N.Y.S.2d 123 (Sup.Ct.1956); Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 199 Misc. 786, 101 N.Y.S.2d 483 (Sup.Ct.1950), aff'd 279 App.Div. 632, 107 N.Y.S.2d 795; Prosser, Torts 720–733. While the prospect of recovery would be less likely if it were shown that the other employment relationships were at will, A. S. Rampell, Inc. v. Hyster Co., supra, it cannot be said that alleged attempts to induce other employees to resign fails to state a claim upon which relief may be granted.

■ Although there is no claim of either an oral or written express covenant not to compete with the defendant upon leaving its employ, there is a narrow channel through which the defendant may be able to establish a right to recovery.

Over 50% of defendant's business is done with Sears Roebuck and Company. It is not claimed that there is anything secret or confidential about the identity

of defendant's customers. It is argued, however, that the knowledge of customers' requirements which plaintiff acquired during his ten odd years in defendant's employ is in the nature of confidential information or trade secrets of such a nature that the plaintiff should not be able to utilize it in his new employ. The general rule is that, absent a breach of an expressed contract or fiduciary duty, or absent any fraud, an employee who has left his employment will not be restrained from competing with his former employer. S. W. Scott & Co., Inc. v. Scott, 186 App.Div. 518, 174 N.Y.S. 583 (1st Dept. 1919); J. C. Taylor Maid Service, Inc. v. Maids Unlimited, Inc., 26 Misc.2d 273, 204 N.Y.S.2d 281 (Sup. Ct.1960); Eisenstaedt v. Schweitzer, 13 Misc.2d 703, 177 N.Y.S.2d 277 (Sup.Ct. 1958).

■ No claim of fraud is made nor is it contended that plaintiff was a manager or officer of the defendant who thus might be prevented from competing with defendant because of a confidential or fiduciary relationship. J. C. Taylor Maid Service, Inc. v. Maids Unlimited, Inc., supra; Apollo Stationery Co. v. Pilmar, 11 Misc.2d 263, 173 N.Y.S.2d 854 (Sup. Ct.1958), permanent injunction denied, 15 Misc.2d 91, 182 N.Y.S.2d 637 (Sup.Ct. 1959). "A distinction is made in the cases between a former employee soliciting customers of his former employer who are openly engaged in business in advertised locations and his soliciting unadvertised customers who became known to the employee only because of information obtained during his employment." People's Coat, Apron & Towel Supply Co. v. Light, 171 App.Div. 671, 157 N.Y.S. 15 (2d Dept. 1916), aff'd 224 N.Y. 727, 121 N.E. 886 (1918), quoted and followed in Town & Country House & Home Service, Inc. v. Newbery, 3 N.Y. 2d 554, 170 N.Y.S.2d 328, 147 N.E.2d 724 (1958). In the Town & Country case, the plaintiff was engaged in a specialized form of home cleaning by teams of men. Its customer list had been carefully built up in a process involving substantial effort and expense. The de-fendant in the instant case does not contend that its customers are of such a confidential nature as to bring it within the rule of the Town & Country case.

In support of its first counterclaim the defendant argues that plaintiff, by virtue of his employment, became familiar with the requirements of defendant's customers and that these requirements are in the nature of confidential information or trade secrets which should be protected by law. In S. W. Scott & Co., Inc. v. Scott, supra, it was claimed that the defendant, an insurance broker, was using alleged confidential information in soliciting the customers of his former employer, i. e., the knowledge of the expiration dates of their policies. The court stated:

"* * * The employé may make use in his new employment of the knowledge he had acquired in the old. If it involves no breach of confidence, it is not unlawful, 'for equity has no power to compel a man who changes his employers to wipe clean the slate of his memory.' Peerless Pattern Co. v. Pictorial Review Co., 147 App.Div. 715, 717, 132 N.Y.Supp. 37, 39. * * *

"* * * he can use the knowledge that he has acquired of the customers of his employer with whom he dealt, as to the needs of their business [and], the times when they were accustomed to order * * *."

In Apollo Stationery Co. v. Pilmar, supra, plaintiff sought a temporary injunction to prevent a former employee from soliciting its customers or doing any business with them. The plaintiff there alleged that the defendant had illicitly obtained a list of its customers and information concerning its prices, markups and the nature of the items ordered from each of the customers involved. The defendant was a salesman who had regularly serviced seventy to eighty of plaintiff's accounts. The court held that prices are not trade secrets in the sale of ordinary merchandise, citing Peerless Pattern Co. v. Pictorial Review Co., supra, nor are

methods of estimating costs and markup trade secrets. Richard M. Krause, Inc. v. Gardner, 99 N.Y.S.2d 592 (Sup.Ct. 1950). The items involved in the Pilmar case were ordinary stationery items. Subsequently, the court denied the plaintiff's application for a permanent injunction as well, 15 Misc.2d 91, 182 N.Y.S.2d 637 (Sup.Ct.1958), aff'd 9 A.D.2d 649, 192 N.Y.S.2d 475 (1st Dept. 1959). The court noted that the plaintiff's customers' files were open at all times to all those in plaintiff's employ. In considering the fact that the defendant therein had worked for plaintiff for thirteen years the court stated: "There is no general rule classifying information acquired over years of employment as confidential to the employer."

In Gulf Oil Corp. v. Rapp, 33 Misc.2d 1011, 226 N.Y.S.2d 562 (Sup.Ct.1962), the defendant had been a salesman in plaintiff's employ who negotiated loans, mortgages and contracts with customers on the basis of information available to all of plaintiff's salesmen. Plaintiff alleged, however, that the information was confidential in that if competing firms of the plaintiff knew the details thereof they could apprise what inducements to offer to the plaintiff's customers in order to lure them away. The court held that such information did not entitle the employer to protection; it refused to invoke the principle of law that, even in the absence of a restrictive covenant, the employee was dutybound to refrain from the exploitation of this information which he had obtained during the course of his employment.

Nevertheless, while the channel through which defendant will have to navigate may well be a narrow one on the facts of this case, the court cannot at this juncture hold that, on a trial on the merits, the defendant will not be able to establish that the plaintiff was possessed of confidential information of such a nature that its use by plaintiff should be enjoined. See generally Kalinowski, Key Employees and Trade Secrets, 47 Va. L.Rev. 583 (1961).

## The Second Counterclaim

The plaintiff has also moved to dismiss defendant's second counterclaim, which alleges that by virtue of plaintiff's breach of the agreement, and the duty of loyalty owed defendant, the plaintiff is required to refund to defendant the sum of $2,306.66 paid plaintiff between January 1, 1962 and March 12, 1962. Defendant's first argument in support of this counterclaim is that plaintiff's alleged disloyalty in seeking to persuade other employees of the defendant to leave their employ, causes him to forfeit all rights to compensation already received. Similar facts were presented in the case of Kleinfeld v. Roburn Agencies, 270 App.Div. 509, 60 N.Y.S.2d 485 (1st Dept. 1946). There the plaintiff sued for compensation due. The defendant counterclaimed that the plaintiff was required to return the weekly wages received during his employment because of an alleged breach of his obligations of good faith and loyalty. Notwithstanding these obligations, the court applied the general rule, i. e., that, in the absence of a special agreement, an employer may not recover wages or similar drawings paid during a period of completed employment. See Gaetjens v. Gaetjens, Berger & Wirth, Inc., 151 F.Supp. 701 (S.D.N.Y. 1957); Nationwide Mutual Insurance Co. v. Timon, 9 App.Div.2d 1018, 194 N.Y.S. 2d 429 (4th Dept. 1959). No such special agreement is pleaded in the instant case. While the rule may be otherwise in cases of flagrant dishonesty, Sundland v. Korfund Co., Inc., 260 App.Div. 80, 20 N.Y. S.2d 819 (1st Dept. 1940), no such facts are here alleged.

Defendant further contends that the contract of employment was an entire, indivisible contract for one year; that plaintiff was required to perform the entire contract before becoming entitled to any compensation thereunder; that, when plaintiff breached the contract by leaving defendant's employ on March 12, 1962, he automatically forfeited all right to any compensation, including that already received, and became indebted to

the defendant in a sum equal to the salary he had received prior to March 12, 1962.

Assuming, for the purposes of this motion, that the contract was an entire contract for one year, and that a breach thereof by the employee would foreclose his right to recover salary and commissions earned but not paid prior to the breach, Coletti v. Knox Hat Company, Inc., 252 N.Y. 468, 169 N.E. 648 (1930); Stevens v. Elizabeth Arden, Inc., 253 App.Div. 358, 2 N.Y.S.2d 187 (1st Dept. 1938), it does not follow that the employee would be obliged to repay to his employer salary and commissions already received, in the absence of a special agreement. Kleinfeld v. Roburn Agencies, supra. No such special agreement is pleaded by the defendant.

The motion to dismiss the second counterclaim is granted.

Settle an order consistent herewith on or before ten (10) days from the date hereof.