Vincent A. Lupiano, J.
Plaintiff moves for a temporary injunction which will restrain the defendants from importing, distributing and selling dictating and transcribing machines manufactured by “ Grundig ” or bearing the trade name “ Grundig ” or bearing the trade-mark “ Stenorette ” or the name “ Grundig Stenorette ” or “De Jur-Grundig Stenorette ”, or from using such names or from interfering in any manner with plaintiff’s contractual rights under its agreement with Grundig.
Plaintiff had been designated by contract dated March 9, 1955, the exclusive distributor of the Grundig Stenorette, a dictating and transcribing machine of German manufacture. It appears that the article was thus introduced into the United States market for the first time and that plaintiff has been responsible for its development. It has the use of the name De Jur Grundig in the distribution of the Grundig Stenorette and it has also the use of the trade-mark Stenorette during the term of the contract. Plaintiff has not only improved the product as it is now produced for it, but it has expended substantial moneys, efforts and skills in development of the product, the market and marketing methods, including fair-trade contracts. Defendants purchased in the European markets *773 the Grundig Stenorette, the original article and the manufacture of Grundig, but none from the manufacturer. Defendants assert that upon inquiry their suppliers in Europe confirmed their freedom to sell for resale in the United States. It appears, as plaintiff claims, that the original article thus purchased by defendants is inferior to the product made for plaintiff and that because of such inferiority and lower competitive prices at the retail level plaintiff’s position has been adversely affected.
There does not appear to be any “ palming off ” upon the basis of this submission. That does not, however, necessarily defeat the validity of plaintiff’s claim of unfair competition. Whether its existence is shown in sufficient degree to warrant temporary injunctive relief is not necessary to determine at this time, for the court reaches the conclusion such relief is warranted on the basis of interference with plaintiff’s property rights. (Metropolitan Opera Assn. v. Wagner-Nichols Recorder Corp., 199 Misc. 786, affd. 279 App. Div. 632.) In that case Metropolitan had given to the plaintiff, Columbia Records, Inc., the exclusive right to record Metropolitan’s operatic performances and to the plaintiff American Broadcasting Company, Inc. the exclusive broadcasting rights. Defendants took the performance “‘off the air’” (p. 790) and made and sold recordings thereof. The court there stated (p. 803):
“ The rule enunciated in these cases has been aptly summed up in 41 Harvard Law Review (pp. 731-732) as follows: ‘ And today there is no question but that there may be prima facie liability for interference with contract relations without inducing breach of contract by, for example, injuring persons under contract so that they are disabled from performing, or by destroying or damaging property which is the subject matter of a contract, or by doing other acts which make performance more burdensome, difficult or impossible or of less or no value to the one entitled to performance. ’
“ The present defendants’ conduct interferes with Columbia Records’ enjoyment of the benefits of its exclusive contract as plainly as if the defendants had persuaded Metropolitan Opera to break its contract with Columbia Records by granting to them the privilege of recording Metropolitan Opera performances. The right of the parties to protect their interest in that contract against interference by the intentional acts of third parties is not limited by the analogies of common-law property rights.
“ There can be no question that the contract between Metropolitan Opera and Columbia Records, by which each party made important business commitments and parted with valuable *774 consideration, is fully enforeible between the two companies. If Metropolitan Opera had purported to grant to the defendants or to any other party the privilege which the defendants have taken to themselves, a court of equity would certainly enjoin it from doing so. Conversely, if Columbia Records had repudiated the contract there is no doubt that Metropolitan Opera could enforce it.”
There is a clear showing that plaintiff’s contracts are more difficult of performance and are rendered less valuable by reason of defendants’ conduct. The original supplier to plaintiff and indirectly to defendants has done nothing to introduce any element into this market to interfere with plaintiff’s enjoyment of the contract. Nor is there any showing of abandonment of those rights by distribution of another manufacture by plaintiff’s supplier in the European markets. Culpability in sufficient measure for this motion is shown, in addition, in the claimed assurances to these defendants by their sellers in Europe that defendants are free to resell the inferior article in the United States in an exclusive market established at great expense and use of skills by plaintiff and at no cost or effort by defendants, save to procure the product so as to trade in that market and to interfere with plaintiff’s contractual rights.
Motion is granted.
Settle order within five days, at which time suggestions will be received as to the amount of bond.