[No. S004037. June 7, 1990.]

PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff and Appellant, v.
BEAR STEARNS & COMPANY et al., Defendants and Respondents.

1122

COUNSEL

Howard V. Golub, Douglas A. Oglesby, Shirley A. Sanderson and Randall J. Litteneker for Plaintiff and Appellant.

Janice E. Kerr, Michael B. Day and Suzanne Engelberg as Amici Curiae on behalf of Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, Paul R. Haerle, Steven L. Hock, Greve, Clifford, Diepenbrock & Paras, Claire H. Greve, Mudge, Rose, Guthrie, Alexander & Ferdon, Thomas W. Evans and Audrey Strauss for Defendants and Respondents.

OPINION

BROUSSARD, J.—We are called upon to decide whether a cause of action in tort may be stated for intentional interference with contractual relations or intentional interference with prospective economic advantage when it is alleged defendant induced a party to a contract to seek a judicial determination whether it may terminate the contract according to its terms.

We have concluded that to allow either cause of action to be stated when the only interference alleged is that defendant induced the bringing of potentially meritorious litigation would be an unwarranted expansion of the scope of these torts and a pernicious barrier to free access to the courts. We therefore reverse the judgment of the Court of Appeal.

I.

Pacific Gas and Electric Company (PG&E) sued Bear Stearns & Company (Bear Stearns), an investment brokerage firm, for interfering with its

long-term contract for the purchase of hydroelectric power from Placer County Water Agency (Agency). It alleged intentional interference with contractual relations, intentional interference with prospective business advantage, and attempted inducement of breach of contract. Bear Stearns demurred successfully, and the complaint was dismissed. The Court of Appeal reversed the trial court's order as to the first two causes of action.

The facts pleaded in PG&E's second amended complaint are as follows. In April 1963, PG&E entered into a power purchase contract with the Agency to buy all of the hydroelectric power to be generated by its Middle Fork American River Project. The contract provided that the agreement would terminate in 2013 or at the end of the year in which the Agency completed retirement of its project bonds, whichever occurred first.

As energy prices rose, the Agency wished it could terminate the contract and sell its hydroelectric power in a more favorable market, but felt it could not do so without a breach. Bear Stearns approached the Agency and spent several years overcoming the Agency's resistance to making any effort to terminate the contract. Finally it succeeded, and in May 1983, the Agency entered into a contingent fee agreement with Bear Stearns, in which Bear Stearns agreed to pay for legal, engineering, and marketing studies on the feasibility of terminating the power contract, in return for 15 percent of any resulting increase in the Agency's revenues above $2.5 million for 20 years.

Bear Stearns retained legal counsel to draw up a plan by which the Agency could retire its project bonds, and to litigate the question whether the Agency could terminate the contract. It also retained an engineer, and conducted a marketing campaign to solicit buyers for the Agency's power. It agreed to pay half of the fees of the Agency's independent counsel.

In December 1984, the Agency served a demand for arbitration under the power contract on PG&E, to resolve the question whether the Agency could terminate the contract before 2013 by retiring its project bonds. PG&E responded by filing several lawsuits, including the first complaint in this one. The Agency withdrew the demand for arbitration and sought a declaratory judgment that the contract could be terminated early by retiring the project bonds. The trial court entered a judgment on the pleadings in favor of the Agency. The Court of Appeal reversed, finding that the trial court had erred in failing to consider certain extrinsic evidence showing that the parties did not intend the contract to be terminable before 2013.[1] That action is still pending.

---

[1] (*Pacific Gas and Electric Company* v. *Placer County Water Agency* (Sept. 25, 1987) D005241 [nonpub. opn.].) We may take judicial notice of the Court of Appeal's decision. (Evid. Code, § 452, subd. (d).)

The complaint in the present action alleged disruption of the contractual relation in that the Agency has breached the promises made in its official statement accompanying its bond issue, and in its bond resolution, that the contract would continue in effect until 2013. In addition, PG&E alleged its own performance has been made more expensive and burdensome because of legal expenses incurred in litigation to protect its rights under the power contract, the official statement, and the bond resolution and because it has lost assurance that the Agency will continue to perform. It alleged irreparable injury in that the Middle Fork American River Project is irreplaceable, termination of the power contract may cause a substantial increase in the cost of electricity it provides its customers, and Bear Stearns lacks the capital to reimburse PG&E for its damages if the contract is terminated. The complaint sought an injunction restraining Bear Stearns from continuing to encourage, finance or participate in the Agency's efforts to terminate the contract, and restraining Bear Stearns from continuing to solicit future buyers for the Agency's power, and damages according to proof.

PG&E alternatively sought to state a cause of action for intentional interference with prospective economic advantage, alleging that regardless of the terms of the contract, it had an expectancy that the power sales would continue until 2013, and that Bear Stearns interfered with this valuable expectancy by inducing the Agency to seek to terminate the contract.

The trial court sustained Bear Stearns's demurrer without leave to amend. The Court of Appeal reversed the order sustaining the demurrer as to the causes of action for intentional interference with contractual relations and with prospective economic advantage. It acknowledged that no breach of contract was threatened, but held that either cause of action may be stated without alleging an actual or threatened breach. It drew an analogy between this case and those in which conduct that induces the termination of an at-will contract is deemed actionable. There, too, the outsider's interference is actionable, though the disruption of the existing or prospective contractual relationship it causes does not amount to a breach of contract.

## II.

■ In reviewing the sufficiency of a complaint, we accept as true all the properly pleaded allegations stated in the complaint. (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60]; *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) ■ With this rule in mind, we consider whether an allegation that defendant induced a contracting party to seek a judicial determination whether it can terminate the contract according to its terms adequately states a

cause of action for interference with contractual relations or intentional interference with prospective economic advantage.

■ It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract. (*Lumley* v. *Gye* (1853) 2 El. & Bl. 216 [118 Eng. Rep. 749]; *Imperial Ice* v. *Rossier* (1941) 18 Cal.2d 33 [112 P.2d 631], and cases cited.) The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 765-766 [206 Cal.Rptr. 354, 686 P.2d 1158]; *Ramona Manor Convalescent Hospital* v. *Care Enterprises* (1986) 177 Cal.App.3d 1120, 1130 [225 Cal.Rptr. 120]; *Farmers Ins. Exchange* v. *State of California* (1985) 175 Cal.App.3d 494, 506 [221 Cal.Rptr. 225].)

■ The tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract. (*Buckaloo* v. *Johnson, supra,* 14 Cal.3d 815, 823.)[2] The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective. (*Environmental Planning and Information Council* v. *Superior Court* (1984) 36 Cal.3d 188, 194; *Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 823, fn. 6.)

■ The parties have raised two questions under the settled law we have recited. The first is whether inducing a party to a contract to seek to terminate the contract according to its terms is ever actionable interference with contractual or prospective economic relations. The second question is whether actual interference is adequately alleged when the interference consists of inducing litigation on the contract. Considering the established

---

[2] We recently noted the elements of the tort: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (*Youst* v. *Longo* (1987) 43 Cal.3d 64, 71, fn. 6 [233 Cal.Rptr. 294, 729 P.2d 728]; see also *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 330 [216 Cal.Rptr. 718, 703 P.2d 58]; *Seaman's Direct Buying Service Inc.,* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 766; *Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 827.)

boundaries of the tort, we conclude that it may be actionable to induce a party to a contract to terminate the contract according to its terms. On the second point, we acknowledge that interference which makes enjoyment of a contract more expensive or burdensome may be actionable, and that PG&E alleges its rights under the contract have been made more expensive because it has incurred significant costs in defending itself against the declaratory relief action that it alleges Bear Stearns induced the Agency to bring. This conclusion will bring us face to face with the question, not squarely framed by the parties, whether it is proper to impose liability for inducing a potentially meritorious lawsuit. We will conclude that it is not.

Bear Stearns claims initially that there can be no cause of action for inducing a contracting party to seek to terminate the contract according to its terms. The claim runs afoul of the rule, established in this and the majority of other jurisdictions,[3] giving rise to a cause of action for inducing termination of an at-will contract, as the Court of Appeal perceived.

█ Cases establishing a cause of action for interference with at-will and voidable contracts make it clear that it is the contractual relationship, not any term of the contract, which is protected against outside interference. We have affirmed that interference with an at-will contract is actionable interference with the contractual relationship, on the theory that a contract " 'at the will of the parties, respectively does not make it one at the will of others' " (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867], quoting *Truax* v. *Raich* (1915) 239 U.S 33, 38 [60 L.Ed. 131, 134, 36 S.Ct. 7]). As Justice Tobriner said in the context of voidable contracts: "The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable or not enforceable." (*Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55, 57 [12 Cal.Rptr. 319]; see also *Kozlowsky* v. *Westminster Nat. Bank* (1970) 6 Cal.App.3d 593, 598 [86 Cal.Rptr. 52].) Reviewing courts have reiterated in case after case that the contractual relationship is at the will of the parties, not at the will of outsiders. (*Speegle* v. *Board of Fire Underwriters, supra*, 29 Cal.2d at p. 39; *Abrams & Fox, Inc.* v. *Briney* (1974) 39 Cal.App.3d 604, 608 [114 Cal.Rptr. 328]; *Skelly* v. *Richman* (1970) 10 Cal.App.3d 844, 862 [89 Cal.Rptr. 556]; *Kozlowsky* v. *Westminster Nat. Bank, supra*, 6 Cal.App.3d at p. 598; *Freed* v. *Manchester Service, Inc.* (1958) 165 Cal.App.2d 186, 189 [331 P.2d 689]; *Romano* v. *Wilbur Ellis & Co.* (1947) 82 Cal.App.2d 670, 673 [186 P.2d 1012].)

---

[3] See Prosser and Keeton, Torts (5th ed. 1984) section 129, pages 995-996; see also, Restatement Second of Torts section 766, and comment g, pages 10-11; Comment, *Tortious Interference with Contractual Relations in the Nineteenth Century: The Transformation of Property, Contract, and Tort* (1980) 93 Harv.L.Rev. 1510.

Further, the expectation that the parties will honor the terms of the contract is protected against officious intermeddlers. Since people " 'usually honor their promises no matter what flaws a lawyer can find, the offender should not be heard to say that the contract . . . meddled with could not have been enforced. . . .' " (*Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 826; see also Prosser & Keeton, *op. cit. supra,* § 129, at p. 995.)[4]

■■■ Nor do express termination provisions create a privilege to interfere, contrary to Bear Stearns's suggestion. In *Shida* v. *Japan Food Corp., supra,* 251 Cal.App.2d 864, for example, plaintiff had a one-year exclusive distributorship contract with a third party, with an express termination date. The contract had been renewed for seven years. Despite the express termination clause, plaintiff was protected against unjustified interference by third parties.[5] (See also *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 712, 717 [104 Cal.Rptr. 96] [actionable interference with renewal of insurance policies at the end of the policies' express term]; *Charles C. Chapman Bldg. Co.* v. *California Mart* (1969) 2 Cal.App.3d 846, 855 [82 Cal.Rptr. 830] [ratifying concept of actionable interference with a lease with an express termination clause].) The result seems obvious; if we protect an economic relationship that is wholly prospective from outside interference, we must also protect contractual relationships that are subject to termination.[6]

---

[4] Many cases have treated claims of interference with voidable and terminable contracts as coming within the cause of action for interference with prospective advantage. (See *Buckaloo* v. *Johnson, supra,* 14 Cal.3d at pp. 824-826, and cases cited [involving voidable brokerage agreements]; *Zimmerman* v. *Bank of America, supra,* 191 Cal.App.2d 55 [same]; *Shida* v. *Japan Food Corp.* (1967) 251 Cal.App.2d 864, 866 [60 Cal.Rptr. 43] [interference with yearly renewal of contract claimed as interference with prospective advantage, but privileged]; see also, *Island Air, Inc.* v. *LaBar* (1977) 18 Wn.App. 129 [566 P.2d 972] [inducing termination of contract terminable on 60 days' notice]; *Smith* v. *Ford Motor Co.* (1976) 289 N.C. 71 [221 S.E.2d 282, 79 A.L.R.3d 651] [inducing termination of at-will employment].) Other authorities agree with this characterization. (Prosser & Keeton, *op. cit. supra,* § 129, at p. 996; see also, accord, 2 Harper et al., The Law of Torts (2d ed. 1986) § 6.7, pp. 311-312; Rest.2d Torts, *supra,* § 766, com. g, at pp. 10-11.) As we have suggested before, it may be preferable not to distinguish the two as separate torts (*Buckaloo, supra,* 14 Cal.3d at p. 823, fn. 6) but we need not resolve that point here, in view of our conclusion that the activity complained of is not included within either tort.

[5] Since the court characterized the tort as interference with prospective advantage, with its broader range of privilege, it reversed the judgment for plaintiff on the ground that defendant had only engaged in justified competition.

[6] In other jurisdictions, too, the existence of an express termination clause in a contract is no bar to a cause of action for interference with contract. (See *Alyeska Pipeline Service* v. *Aurora Air Service* (Alaska 1979) 604 P.2d 1090, 1093; accord, *Island Air, Inc.* v. *LaBar, supra,* 18 Wn.App. 129 [566 P.2d 972]; *Smith* v. *Ford Motor Co., supra,* 289 N.C. 71 [221 S.E.2d 282]; *Mason* v. *Funderburk* (1969) 247 Ark. 521 [446 S.W.2d 543, 546]; *Geschow* v. *Commonwealth Edison Co.* (1982) 111 Ill.App.3d 522 [444 N.E.2d 579]; but see *Ulan* v. *Lucas* (1972) 18 Ariz.App. 129 [500 P.2d 914]; *Radiology Professional Corp.* v. *Trinidad, etc.* (1977) 39 Colo.App.100 [565 P.2d 952].)

██ Bear Stearns's second argument is that a cause of action for intentional interference with contractual relations or prospective advantage requires an allegation that the interference has caused or will ultimately cause a breach of contract or disruption of the relationship. Since it is undisputed that the Agency will not cease performing under the contract unless it obtains a judicial determination that the termination clause of the contract permits it to do so, Bear Stearns concludes that PG&E fails to meet this requirement.

██ Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations. We have recognized that interference with the plaintiff's performance may give rise to a claim for interference with contractual relations if plaintiff's performance is made more costly or more burdensome. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, 766; *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 232 [11 Cal.Rptr. 97, 359 P.2d 465]; see also *Ramona Manor Convalescent Hospital* v. *Care Enterprises, supra,* 177 Cal.App.3d at pp. 1130-1131 [holdover tenant liable for interference with landlord's contractual relations with new tenant].)[7] Other cases have pointed out that while the tort of inducing breach of contract requires proof of a breach, the cause of action for interference with contractual relations is distinct and requires only proof of interference. ██ ██ ██ ██ (*Shamblin* v. *Berge* (1985) 166 Cal.App.3d 118 [212 Cal.Rptr. 313] [defendant warned off potential buyers of real estate, causing rescission of sales contract]; *Manor Investment Co.* v. *F. W. Woolworth Co.* (1984) 159 Cal.App.3d 586, 593, fn. 3 [206 Cal.Rptr. 37] [termination of at-will license could be basis for action for intentional interference with contractual relations, but judgment reversed because inconsistent verdicts]; see also Rest.2d Torts, *supra,* § 766A, at p. 17 & coms. c and g, at pp. 18-19; Prosser & Keeton, Torts, *supra,* § 129, at pp. 991-992; Note, *Civil Conspiracy and Interference with Contractual Relations* (1975) 8 Loyola L.A. L.Rev. 302, 314, fn. 45; Comment, *Interference with Contractual Relations: A Property Limitation* (1966) 18 Stan.L.Rev. 1406.)[8]

---

[7] Other jurisdictions recognize the same rule. (See *De Jur-Amsco Corporation* v. *Janrus Camera, Inc.* (1956) 16 Misc.2d 772 [155 N.Y.S.2d 123, 125-126] [defendant's sales interfered with plaintiff's exclusive distributorship contract with a third party, making the contract of less value]; *Piedmont Cotton Mills, Inc.* v. *H.W. Ivey Const. Co.* (1964) 109 Ga.App. 876 [137 S.E.2d 528, 531] [defendant liable for destroying work plaintiff is under contract with third party to complete]; *Herman* v. *Endriss* (1982) 187 Conn. 374 [446 A.2d 9] [defendant interfered with plaintiff's contract of employment with third party, causing her to lose wages and incur litigation expenses].)

[8] The tort of intentional interference with prospective economic advantage requires an allegation that the interfering conduct has disrupted the relationship. (See *Youst* v. *Longo, supra,* 43 Cal.3d at p. 71, fn. 6; see also *Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 330; *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 766; *Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 827.) We have found no case permitting the cause of action in the absence

██ PG&E has not alleged that Bear Stearns's conduct in promoting the Agency's power among potential buyers, conducting engineering studies, or promoting the idea of termination in the Placer community have had any impact on PG&E. It is not alleged that Bear Stearns induced the Agency to undertake a plan to terminate the contract unilaterally and immediately begin to sell its power elsewhere. ██ ██ It is not alleged that Bear Stearns's marketing campaign for the Agency's power has caused PG&E a present or imminent injury.[9] There is no allegation that unilateral termination is threatened. The only threat to the contract is the litigation. There will be no termination of the contract unless there is a judicial determination that the Agency may terminate, and it appears that PG&E's only present damages are in responding to the action for declaratory relief.

PG&E claims that the cost of defending the contract in the declaratory relief action brought by the Agency is an actual disruption, in that it has made performance more expensive or burdensome.[10] PG&E is entitled to the quiet enjoyment of its contract, and we may have some sympathy with its claim that Bear Stearns's actions have interfered with its contractual relations by forcing it into a costly legal battle the loss of which would deprive it of very valuable expectancies. Nonetheless, the question remains whether inducing a third party to bring litigation on a colorable claim can be the basis for tort liability.

No California case upholding a claim for interference with contract or prospective advantage has involved this kind of conduct. ██ Under

of some actual disruption. (See, e.g., *Buckaloo* v. *Johnson, supra*, 14 Cal.3d 815 [buyers of real estate who bought directly from seller interfered with prospective agency relationship between seller and broker]; *Deeter* v. *Angus* (1986) 179 Cal.App.3d 241, 251 [224 Cal.Rptr. 801] [same]; *Rader Co.* v. *Stone* (1986) 178 Cal.App.3d 10, 29 [223 Cal.Rptr. 806] [lessors interfered with broker's prospective agency relationship]; *Bert G. Gianelli Distributing Co.* v. *Beck & Co.* (1985) 172 Cal.App.3d 1020, 1056-1057 [219 Cal.Rptr. 203] [cause of action stated when brewer caused wholesaler to refuse to supply local distributors]; *Sade Shoe Co.* v. *Oschin & Snyder* (1984) 162 Cal.App.3d 1174, 1180-1181 [209 Cal.Rptr. 124] [cause of action stated when owner prevented lessee from consummating sale of corporate stock by unreasonably refusing to consent to assignment of lease]; *Lowell* v. *Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 19 [144 Cal.Rptr. 664, 6 A.L.R.4th 184] [defendant caused plaintiff to lose profitable offer to buy plaintiff's business]; *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc., supra*, 27 Cal.App.3d 710 [insurance broker stated cause of action against insurance company for preventing broker from retaining lucrative accounts].)

[9] Injunctive relief is available to restrain unjustified interference with contractual relations when damages would not afford an adequate remedy. (See *Imperial Ice Co.* v. *Rossier, supra*, 18 Cal.2d 33; *Remillard-Dandini Co.* v. *Dandini* (1941) 46 Cal.App.2d 678, 680 [116 P.2d 641]; *Heavener, Ogier Services* v. *R. W. Fla. Region* (Fla. 1982) 418 So.2d 1074, 1076, 1077; see also Rest.2d Torts, *supra*, § 766, com. u at p. 17; Prosser & Keeton, Torts, *supra*, § 129, at p. 1002.)

[10] Only the continuation of the power sales contract gives PG&E economic advantage, and it is not disrupted. There is no separate economic advantage to PG&E secured by the statement accompanying the bond issue or the bond resolution, nor have the bonds been called.

existing law, the only common law tort claim that treats the instigation or bringing of a lawsuit as an actionable injury is the action for malicious prosecution. The actionable harm is in forcing the individual to expend financial and emotional resources to defend against a *baseless* claim. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) The bringing of a colorable claim is not actionable; plaintiff in a malicious prosecution action must prove that the prior action was brought without probable cause and was pursued to a legal termination in plaintiff's favor. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498]; *Bertero* v. *National General Corp., supra*, 13 Cal.3d at p. 50.)[11] ▮ We have joined other courts in recognizing the cause of action as a disfavored one because it may deter judicial resolution of differences. (*Sheldon Appel Co.* v. *Albert & Oliker, supra*, 47 Cal.3d at pp. 872, 875.) In fact we have recently refused to vest the jury with the task of determining whether plaintiff has demonstrated that the prior action was brought without probable cause; a court must make the determination "[t]o avoid improperly deterring individuals from resorting to the courts for the resolution of disputes. . . ." (*Id.* at p. 875.) The probable cause requirement is essential to assure free access to the courts; the cause of action is the result of an accommodation "between the freedom of an individual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation." (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 [232 Cal.Rptr. 567, 728 P.2d 1202].) Obviously if the bringing of a colorable claim were actionable, tort law would inhibit free access to the courts and impair our society's commitment to the peaceful, judicial resolution of differences.

Other jurisdictions have perceived the same danger in allowing a petition for judicial or administrative relief to be the basis for a claim of interference with contract or prospective advantage. In *Baker Driveaway Co., Inc.* v. *Bankhead Enterprises* (E.D.Mich. 1979) 478 F.Supp. 857, the district court dismissed a count alleging interference with prospective economic advantage because it was based solely on defendant's intervention in an administrative proceeding. Plaintiffs had sought to patent a trailer design and defendant had formally intervened in the patent office proceedings with the intent to delay them (and thus avoid the obligation to pay royalties); this intervention could not be the basis for a claim of interference with prospec-

---

[11] The instigator, as well as the party, may be liable. A person who is injured by groundless litigation may seek compensation from any person who procures or is actively instrumental in putting the litigation in motion or participates after the institution of the action. (*Jacques Interiors* v. *Petrak* (1987) 188 Cal.App.3d 1363, 1371-1373 [234 Cal.Rptr. 44]; *Lujan* v. *Gordon* (1977) 70 Cal.App.3d 260, 263 [138 Cal.Rptr. 654]; 5 Witkin, Summary of Cal. Law (1988) Torts, § 431, at p. 514; Rest.2d Torts, *supra*, § 674, at p. 452, and coms. a & b.)

tive advantage. "Our system of government places a high value on the freedom of the public to petition the government, and such activity will not be curtailed without some extraordinary showing of abuse." (*Id.* at p. 859.) The court concluded that the cause of action closely resembled one for malicious prosecution and that it was premature since the patent office action had not concluded.

Similarly in *Blake* v. *Levy* (1983) 191 Conn. 257 [464 A.2d 52, 55-56], the Connecticut Supreme Court held that pursuing litigation, unless the litigation is terminated in plaintiff's favor, cannot be the basis for a cause of action for interference with a business relationship. There, plaintiff and a third party had negotiated a merger. On the day it was to be consummated defendant demanded a broker's commission. Plaintiff refused and defendant sued for the fee and ultimately settled. Plaintiff then sued in turn, claiming that defendant's act of filing suit and pursuing it to settlement was tortious interference with plaintiff's contractual relations under the merger agreement. The court disagreed. It compared the torts of malicious prosecution and interference with prospective economic advantage, and said that in order to protect free access to the courts, the same limitation that the prior "interfering" action must have concluded in plaintiff's favor should apply to both.

■■ Our concern with assuring free access to the courts has extended to the privilege for statements made in the course of litigation. We assure all participants in litigation, including litigants, prospective witnesses and counsel, "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions" by extending a broad privilege for publications made in the course of litigation. (*Silberg* v. *Anderson, ante,* 205, 213 [266 Cal.Rptr. 638, 786 P.2d 365]; see Civ. Code, § 47, subd. 2.) The policy of encouraging free access to the courts is so important that the litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress, negligent misrepresentation, invasion of privacy, fraud, and to the torts alleged here: interference with contract and prospective economic advantage. ■■ ■■ ■■ (50 Cal.3d 205, 215 and cases cited.)[12] In fact, the privilege applies to any action except one for malicious prosecution. (*Silberg* v. *Anderson,*

---

[12] The privilege does not apply to bar liability here, as the Court of Appeal correctly determined, because the gravamen of the complaint was not a communication but a course of conduct. (See *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888 [221 Cal.Rptr. 509, 710 P.2d 309] [settlement offers may be evidence of course of conduct in breach of covenant of good faith and fair dealing in insurance context]; see also *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 482 [131 Cal.Rptr. 90, 551 P.2d 410]; *Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200, 234 [194 Cal.Rptr. 180].) Thus, while it could be argued that an exhortation to sue might be privileged, financing and otherwise promoting the litigation would not be.

*supra*, 50 Cal.3d at p. 216; *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364 [696 P.2d 637, 49 A.L.R.4th 417].)[13]

Our concern with protecting free access to the courts has also led us to refuse to expand the tort of abuse of process to include the alleged improper filing of a lawsuit. (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc., supra,* 42 Cal.3d at p. 1170.) We observed that if the filing of a action for an improper ulterior purpose were sufficient to state a claim, the probable cause element of the malicious prosecution tort would be negated. This would upset the established balance between the interest in being free from unjustified litigation and the interest in free access to the courts.[14]

██ The concern we express here, that to permit either cause of action in this context would impair free access to the courts, has led other courts to establish that the scope of the interference torts is limited by the constitutional right to petition for redress of grievances.[15] Beginning with *Sierra Club* v. *Butz* (N.D.Cal. 1972) 349 F.Supp. 934, courts have applied the *Noerr-Pennington* doctrine to shield good faith litigants from tort liability for bringing a lawsuit. This doctrine relies on the constitutional right to petition for redress of grievances to establish that there is no antitrust liability for petitioning any branch of government, even if the motive is anticompetitive. (*California Transport* v. *Trucking Unlimited* (1972) 404 U.S. 508, 510-511 [30 L.Ed.2d 642, 646, 92 S.Ct. 609]; *Mine Workers* v. *Pennington* (1965) 381 U.S. 657, 670 [14 L.Ed.2d 626, 636, 85 S.Ct. 1585]; *Eastern R. Conf.* v. *Noerr Motors* (1961) 365 U.S. 127, 136-137 [5 L.Ed.2d 464, 470-471, 81 S.Ct. 523].) The exception is for sham petitions, brought without probable cause for the purpose of harassment. (*Bill Johnson's Restaurants, Inc* v. *NLRB* (1983) 461 U.S. 731, 741 [76 L.Ed.2d 277, 287-288, 103 S.Ct. 2161]; *California Transport* v. *Trucking Unlimited, supra,* 404 U.S. at pp. 512, 515 [30 L.Ed.2d at pp. 647, 649].)

In the seminal case, the Sierra Club and four individuals sought injunctive relief against a timber company to prohibit logging in a certain area

---

[13] We have shown a similar concern for assuring free access to the courts in deciding upon what showing an attorney may be sanctioned for bringing a frivolous appeal. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 647 [183 Cal.Rptr. 508, 646 P.2d 179].)

[14] The tension between the causes of action at issue here and the limitations of the tort of malicious prosecution has been noted for some time. (See Note (1947) 56 Yale L.J. 885, 889; Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine* (1982) 49 U.Chi.L.Rev. 61, 77.)

[15] The right to petition for redress of grievances is a basic right guaranteed by the state and federal Constitutions (U.S. Const., 1st Amend.; Cal. Const., art. I, § 3.) "The right of petition, like the other rights contained in the First Amendment and in the California constitutional Declaration of Rights, is accorded 'a paramount and preferred place in our democratic system.'" (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 532 [183 Cal.Rptr. 86, 645 P.2d 137], judg. vacated and cause remanded (1983) 459 U.S. 1095 [74 L.Ed.2d 943, 103 P.2d 712], reiterated (1983) 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072].)

pending consideration of the area for wilderness status. Three days after the filing of this claim, the lumber company cross-complained, alleging that plaintiffs' lawsuit was an intentional interference with contract in that it attempted to induce the United States to breach its contract with the company, and that it was an intentional interference with prospective economic advantage. The lumber company sought injunctive relief and compensatory and punitive damages. The district court concluded that the cross-complaint failed to state a cause of action. The district court found that the *Noerr-Pennington* doctrine suggests that the right to petition is of such paramount stature that it would prohibit tort liability in the absence of some claim that the petition was a sham. In order to provide sufficient "breathing space" for the constitutional right, "liability can be imposed for activities ostensibly consisting of petitioning the government for redress of grievances only if the petition is a 'sham,' and the real purpose is not to obtain governmental action, but to otherwise injure the plaintiff." (*Sierra Club* v. *Butz, supra,* 349 F.Supp. at pp. 938-939.) The court concluded that state civil law cannot constitutionally impose liability for a party's successful attempt to influence administrative action or for bona fide litigation. (*Ibid.*)

The same analogy to the *Noerr-Pennington* doctrine has persuaded many courts to similar holdings. In *State of S.D.* v. *Kansas City Southern Industries* (8th Cir. 1989) 880 F.2d 40, certiorari denied __U.S. __[107 L.Ed.2d 745, 110 S.Ct. 726], the state brought an interference-with-contract claim against a railroad company that had sought judicial and administrative relief in an effort to get the state to terminate its at-will contract with a pipeline company to build a coal pipeline. The court applied the *Noerr-Pennington* doctrine to establish a privilege for bringing lawsuits, and reversed a judgment in favor of plaintiff on the ground that there was insufficient evidence that defendant's pursuit of judicial and administrative relief was so clearly baseless as to amount to an abuse of process. (880 F.2d at pp. 50-51; see also *In re IBP Confidential Business Documents Lit.* (8th Cir. 1985) 755 F.2d 1300, 1312-1313, and cases cited.)

Similarly, in *Brownsville Golden Age Nursing Home, Inc.* v. *Wells* (3d Cir. 1988) 839 F.2d 155, the court relied on *Sierra Club* v. *Butz, supra,* 349 F.Supp. 934, to establish that defendants could not be held liable for intentional interference with business relations for bringing a nursing home's illegal practices to the attention of state and federal administrative authorities. In the same vein, the Seventh Circuit relied on *Sierra Club* and the *Noerr-Pennington* doctrine to establish that individuals' complaints to the Securities and Exchange Commission, and their filing of a lawsuit to bar a public offering of stock, could not be actionable as an interference with business relations. Unless the complaints and lawsuit were a sham, in the

sense that they involved baseless claims that were not genuinely aimed at securing the government action petitioned for, they were privileged. (*Havoco of America Ltd.* v. *Hollobow* (7th Cir. 1983) 702 F.2d 643; see also *Suburban Restoration Co., Inc.* v. *Acmat Corp.* (2d Cir. 1983) 700 F.2d 98; *King* v. *Levin* (1989) 184 Ill.App.3d 557 [540 N.E.2d 492]; *Citizens Nat. Bk. of Grant Cty.* v. *First Nat. Bk., Marion* (1975) 165 Ind.App. 116 [331 N.E.2d 471, 484]; *Trepel* v. *Pontiac Osteopathic Hosp.* (1984) 135 Mich.App. 361 [354 N.W.2d 341, 350]; *Protect Our Mountain* v. *District Court* (Colo. 1984) 677 P.2d 1361, 1367; *Anchorage Joint Venture* v. *Anchorage Condo.* (Colo.Ct.App. 1983) 670 P.2d 1249.)

Although this court has not spoken on the precise issue, we have been guided by the constitutional right to petition for relief of grievances in interpreting the reach of the cause of action for malicious prosecution. Thus, in *City of Long Beach* v. *Bozek, supra,* 31 Cal.3d at page 539, we held that a municipality may not state a cause of action for malicious prosecution against a citizen who unsuccessfully sues the city. We reached the conclusion that the government may not respond to any lawsuit with an action for malicious prosecution, because such an action would unduly chill the citizen's constitutional right to seek redress of grievances.[16] (Accord *Cate* v. *Oldham* (Fla. 1984) 450 So.2d 224.) And more directly to the point, a concern with assuring the constitutional right to petition the courts and administrative tribunals has led the Court of Appeal to conclude that an applicant for a liquor license may not bring a cause of action for intentional interference with prospective economic advantage against a group of competitors who had brought an unsuccessful administrative protest against the granting of the license. (*Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128 [161 Cal.Rptr. 532].)[17]

■ These cases, of course, protect the *litigant* from liability for undertaking to bring a colorable claim to court. Bear Stearns is not the litigant. Nonetheless, the constitutional doctrine assuring the right to petition may "impose the outer limits upon the category of conduct that may be subject to liability on the basis of common law doctrine, and thus serve to shape the doctrine itself." (*Environmental Planning & Information Council* v. *Superi-*

---

[16] Our conclusion was based in part on independent state grounds. (See *City of Long Beach* v. *Bozek, supra,* 33 Cal.3d at p. 728.)

[17] The same concern for the citizen's right to seek judicial redress led the Court of Appeal to interpret relevant statutes to allow mass filings in small claims court even though the consolidated value exceeded the jurisdictional amount applicable to that forum. (*City and County of San Francisco* v. *Small Claims Court* (1983) 141 Cal.App.3d 470, 477 [190 Cal.Rptr. 340].) The court also relied on the constitutional doctrine to affirm the right of the small claims petitioners to consult with counsel, despite a statute that appeared to limit that right. (*Id.* at pp. 479-480.)

*or Court, supra,* 36 Cal.3d at p. 195.) Our concern not to chill the right to petition the courts for redress of grievances must inform our view of whether the act of inducing litigation is a tort.

Not every person who wishes to achieve the object of a lawsuit, or who is involved in the bringing of a lawsuit, is a named party.[18] In fact we have no public policy against the funding of litigation by outsiders. (See, e.g., *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 883, 885, and fn. 26 [239 Cal.Rptr. 626, 741 P.2d 124] [settlement agreement structured as loan repayable out of recovery from nonsettling defendant].) If any person who induced another to bring a lawsuit involving a colorable claim could be liable in tort, free access to the courts could be choked off with an assiduous search for unnamed parties. It is important to remember what PG&E is trying to achieve through this lawsuit. It seeks to enjoin Bear Stearns from further participation in the lawsuit in order to avert what it considers to be the irreparable harm of an adverse judgment. It is essentially seeking to abort the lawsuit by starving the litigant of funds. In *Sierra Club* v. *Butz, supra,* 349 F.Supp. 934, too, there were, doubtless, persons who induced the representatives of the club to bring the action, and who provided financial assistance in support of the lawsuit, but were not named parties. Yet it would defeat the purpose of assuring free access to the courts, and cause a flood of oppressive derivative litigation, to assess tort liability for their activities.[19]

The torts of inducing breach of contract and interference with prospective advantage have been criticized as protecting the secure enjoyment of contractual and economic relations at the expense of our interest in a freely competitive economy. (See Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine, supra,* 49 U.Chi.L.Rev. 61, 78-79.)[20] We have been cautious in defining the interfer-

---

[18] In *Noerr* itself, the railroad industry mounted a publicity campaign against the trucking industry designed to foster *indirectly* the adoption and retention of laws destructive of the trucking industry. (*Eastern R. Conf.* v. *Noerr Motors, supra,* 365 U.S. 127; see also *NAACP* v. *Claiborne Hardware Co.* (1982) 458 U.S. 886, 915 [73 L.Ed.2d 1215, 1237-1238, 102 S.Ct. 3409]; *State of Mo.* v. *Nat. Organization for Women* (8th Cir. 1980) 620 F.2d 1301, 1315.)

[19] We are aware that such counterclaims are a standard tactic in environmental litigation. (See Note, *Counterclaim and Countersuit, Harassment of Private Environmental Plaintiffs: The Problem, Its Implications and Proposed Solutions* (1975) 74 Mich.L.Rev. 106, 110-111; Pell, *SLAPPed Silly* (Feb. 1990) Cal.Law., at p. 24; Sive, *Countersuits, Delay, Intimidation Caused by Public Interest Suits* (June 19, 1989) National L.J., at p. 26; Zweig, *A Slap in the Face* (May 29, 1989) Forbes, at p. 106.)

[20] Professor Perlman argues that while contract doctrine promotes economic efficiency and competition by minimizing transaction costs and encouraging "efficient breach," the interference torts thwart this goal by punishing efficient breaches even when no improper means are alleged. (*Op. cit. supra,* at p. 79.)

ence torts, to avoid promoting speculative claims. Thus, in *Youst* v. *Longo*, *supra*, 43 Cal.3d 64, we refused to recognize the cause of action in the sporting context. We also refused to extend the tort to protect expectancies beyond those involved in ordinary commercial dealings—a person's expectancy in the outcome of a government licensing proceeding is not protected against outside interference. (*Blank* v. *Kirwan, supra*, 39 Cal.3d at p. 330.) Given the criticism of these causes of action and the dangers inherent in imposing tort liability for competitive business practices, we have no motivation to expand these torts so that they begin to threaten the right of free access to the courts. ▉▉▉ Our legal system is based on the idea that it is better for citizens to resolve their differences in court than to resort to self-help or force. It is repugnant to this basic philosophy to make it a tort to induce potentially meritorious litigation. To permit a cause of action for interference with contract or prospective economic advantage to be based on inducing potentially meritorious litigation on the contract would threaten free access to the courts by providing an end run around the limitations on the tort of malicious prosecution.

We are satisfied that the malicious prosecution cases strike the appropriate balance between the right to free access to the court and the interest in being free from the cost of defending litigation. We conclude that a plaintiff seeking to state a claim for intentional interference with contract or prospective economic advantage because defendant induced another to undertake litigation, must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor.

### III.

▉▉▉ Since it is not alleged that Bear Stearns's conduct has made PG&E's enjoyment of the benefits of its contract more expensive and burdensome, apart from forcing PG&E to defend a costly lawsuit, and since it is not alleged that the lawsuit was brought without probable cause and that it terminated in plaintiff's favor, plaintiff has not stated a cause of action for intentional interference with contractual relations or prospective economic advantage. It is evident from the face of the complaint that plaintiff cannot allege termination of the prior action in its favor since that action is still pending. Therefore, the judgment of the Court of Appeal is reversed. The

cause is remanded to the Court of Appeal with directions to affirm the judgment of the trial court dismissing the action.

Lucas, C. J., Mosk, J., Eagleson, J., Kennard, J., Arabian, J., and Puglia (Robert K.), J.,* concurred.

---

*Presiding Justice, Court of Appeal, Third Appellate District, assigned by the Chairperson of the Judicial Council.