Filed 4/5/21  Belcher v. CSAA Insurance Services CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANTHONY D. BELCHER,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CSAA INSURANCE SERVICES, INC.,<br><br>　　　Defendant and Respondent. | A158210<br><br>Contra Costa County<br>Super. Ct. No. MSC18-01927) |

Plaintiff Anthony D. Belcher, appearing in propria persona, appeals a judgment entered in favor of defendant CSAA Insurance Services, Inc. (CSAA) after the court sustained without leave to amend CSAA's demurrer to Belcher's second amended complaint. Plaintiff contends the court erred in holding that his complaint fails to allege a cause of action for interference with contractual relations or prospective economic advantage. We affirm.

**Background**

Plaintiff's complaint alleges that he is an " 'at will' contract employee" at a limited liability company called Westech Environmental (Westech) that does environmental, health and safety work for various insurance clients, including CSAA. Plaintiff's job is to provide independent, third-party regulatory compliance oversight of the environmental, health and safety aspects of remediation and restoration projects after a property casualty loss. His role includes ensuring worker safety and certifying re-occupancy

1

clearances for building owners. Plaintiff's complaint alleges that CSAA interfered with his contractual relations with Westech and Westech's clients and interfered with his prospective economic advantage arising out of an insurance-related product he had developed.

The complaint alleges that between 2006 and 2014, plaintiff worked on a number of projects for CSAA and there were "no significant issues" with the projects. In 2014, however, plaintiff began noticing problems with the CSAA projects and began hearing complaints about worker safety from employees of a contractor and subcontractor on the CSAA projects. In August 2014, plaintiff sent a "Notice of Concern" to the contractor, subcontractor and CSAA. The letter advises, "As a training provider for the State of California, I am required to report instances of violations I witness first hand to [the State of California, Division of Occupational Safety and Health (known as Cal/OSHA)]. In the event that I suspect such violations, I am urged to contact the company and provide a 'Notice of Concern.' " The letter does not identify any specific workplace safety violations. Instead, it continues, "Our training courses cover employee safety as well as employer compliance for worker protection. These classes are open for discussion and conversations invariably shift to why some employers neither adhere to Cal/OSHA standards nor adequately protect their employees. On more than one instance your company's name has come into the conversation. [¶] It should be noted that the State of California has regulations that differ from the rest of the country in that they are more stringent than Federal . . . requirements. Since this letter is a notice of concern, we are prohibited from any appearance of solicitation. Accordingly, we can only recommend that you consult with your safety manager and review your workplace programs. [¶] It is my most sincere hope that this letter sheds light on ways that will help develop and

foster policies that are beneficial to your company and valued employees. Thank you for taking the time to address my concerns." Although the contractor and CSAA sought clarification of his specific safety concerns, no additional information appears to have been provided. On October 24, 2014, plaintiff wrote to CSAA accusing it of wrongly instructing other contractors not to work with Westech and making threats to plaintiff's clients. General Counsel for CSAA responded and denied the allegations of wrongdoing. Plaintiff's complaint alleges that immediately after he sent the notice of concern to CSAA, "work projects to Westech from CSAA declined dramatically." The pleading acknowledges that the complaint is not based on CSAA's lack of ongoing business with Westech, but that CSAA committed a "series of wrongful acts that resulted in injury to the plaintiff."[1]

The complaint alleges that CSAA interfered with plaintiff's marketing of an insurance-related product that he had developed and named "CalCris." Plaintiff allegedly developed a prototype of a product that was designed to help consumers determine "which insurance companies had the best diversity ranking position as measured in algorithm and numeric value." In October 2014, plaintiff shared the prototype with a member of the California Department of Insurance, Diversity Task Force (task force), who was also a

---

[1] Also, apparently by way of background, the complaint alleges that CSAA interfered with plaintiff's application to become an asbestos supervisor training provider. The complaint alleges that in February 2014, plaintiff applied to Cal/OSHA to become an asbestos supervisor training provider, but his application was never processed. The complaint alleges "on information and belief" that an employee with the contractor referenced above contacted Cal/OSHA and "pressured" two Cal/OSHA employees not to process his application. The complaint alleges further that CSAA "was the mastermind behind this conspiracy and wrongful act of using intimidation methods on [the Cal/OSHA] employees . . . that lead to their refusal to process plaintiff['s] application."

CSAA employee. The employee allegedly kept the prototype and when he failed to "follow-up" with plaintiff, plaintiff was led "to conclude that [the task force member] would potentially work to dimmish the value of the prototype." In 2015, plaintiff submitted the "CalCris" idea to the "Chief of Staff" of the task force, who was "highly receptive of the concept and provided plaintiff with substantial information and resources to develop the concept." In 2017, however, when a new person became the chief of staff, plaintiff was informed "without explanation" that the task force "would no longer participate or promote the concept." The complaint alleges that CSAA "in a vindictive and wrongful act" used its employee's "influence as a [task force] member to intimidate and pressure, the new task force Chief of Staff . . . into rescinding staff support to [plaintiff] thereby causing [plaintiff's] employer to sustain the substantial loss of time and materials."

Finally, the complaint alleges that CSAA interfered with Westech's contracts with other clients. The complaint alleges that at a task force meeting in 2017, plaintiff was approached by an attorney for CSAA who arranged a meeting between plaintiff and the same CSAA employee on the task force with whom plaintiff had met in October 2014. This time, plaintiff shared with the employee his "plan for [a] state-wide Environmental Health and Safety Networking Program." According to the complaint, the employee "was less interested [in] the network plan, and very persistent and very intimidating in his interest as to the identities of Westech's clients." After intense pressure and intimidation" plaintiff reluctantly gave him information regarding the identities of Westech's clients. The complaint explains that in the absence of CSAA projects following the 2014 communications about his notice of concern, plaintiff "worked to increase projects with other insurance companies" and by 2017, he had averaged 200 projects per year with other

4

insurance companies.[2] In the year after the 2017 meeting, however, "Westech's total projects were reduced to four." The complaint alleges that CSAA used the 2017 task force meeting "as a ruse" to obtain the identities of Westech's other clients and then engaged in "unsolicited and unfavorable contact" with their clients that was "intended to disrupt" the performance of his contracts with those clients.

The second amended complaint alleges three causes of action.[3] The first cause of action, for interference with contractual relations, is based on CSAA's alleged "unsolicited and unfavorable contact" with Westech's clients after the 2017 meeting. The second and third causes of action, for intentional and negligent interference with prospective economic advantage, are based on CSAA's alleged sabotage of his ability to develop and market his "CalCris" prototype to the task force and to other clients.

The trial court sustained CSAA's demurrer to the second amended complaint without leave to amend. The court explained, "After three attempts at pleading this [interference] claim, Belcher has not been able to set out sufficient *facts* to connect CSAA's conduct to plaintiff's harm. The [second amended complaint] remains wholly conclusory."

Plaintiff timely filed a notice of appeal from the resulting judgment.

---

[2] The complaint lists 11 insurance companies and refers to them collectively as the "Westech Contracting Parties."

[3] Additional causes of action for unfair competition pursuant to Business and Professions Code section 17200 and abuse of authority under Government Code section 53243 were dismissed after the court sustained without leave to amend CSAA's demurrer to the first amended complaint. Plaintiff does not appear to be challenging the court's ruling as to these causes of action.

## Discussion

### 1.  Standard of Review

On review of the sufficiency of a complaint against a general demurrer, "[w]e first review the complaint de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law. [Citation.] Second, we determine whether the trial court abused its discretion by sustaining the demurrer without leave to amend. [Citation.] Under both standards, appellant has the burden of demonstrating that the trial court erred. [Citation.] An abuse of discretion is established when 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.' " (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.)

As plaintiff notes, this court will "liberally construe the pleading with a view to substantial justice between the parties." (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726, citing Code Civ. Proc., § 452; see also *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 ["[W]e ignore '[e]rroneous or confusing labels . . . if the complaint pleads facts which would entitle the plaintiff to relief.' "]; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908 ["[T]he trial court is obligated to look past the form of a pleading to its substance."].) However, contrary to plaintiff's suggestion, he is entitled to no special treatment because of his self-representation. "Plaintiff's status as a party appearing in propria persona does not provide any basis for attacking the demurrer procedure; such a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Mfg., Inc.* (1996) 43 Cal.App.4th 1200, 1210.)

6

## 2. *Interference with Contract*

"It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract. [Citations.] The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) Moreover, "to state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." (*Ixchel Pharma, LLC v. Biogen, Inc*. (2020) 9 Cal.5th 1130, 1148.)

Plaintiff's complaint alleges that CSAA interfered with plaintiff's "at will work contract" with Westech. The complaint alleges that CSAA's "Acting Agent . . . used his position on the [task force] to obtain unrestricted access to Westech Contracting Parties through Diversity Outreach Coordinators and through wrongful acts of intimidation, false or misleading information or through available public information, used his position and his perceived influence with the Insurance Commissioner to dissuade Westech Contracting Parties to continue profitable business relation[s] with plaintiff['s] employer." Generalizing about "uninitiated, unsolicited and unfavorable contact" between CSAA and Westech's clients is entirely inadequate. (See *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1120 ["The facts to be pleaded are those upon which liability depends—facts constituting the cause of action, or 'ultimate facts.' "]; *Doe v. Roman Catholic*

*Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960 ["unsupported speculation" is insufficient to withstand a demurrer].) The complaint fails to allege *how* CSAA improperly exerted its influence or dissuaded Westech's clients from working with plaintiff. No facts are alleged setting forth the "wrongful acts of intimidation" or the "false or misleading information" that was disseminated by CSAA. As the trial court observed, the pleading is entirely conclusory.

The court did not abuse its discretion in sustaining the demurrer without leave to amend. Plaintiff was given two chances to amend and proffered no additional facts in support of a third amendment. Contrary to plaintiff's suggestion, there is no general rule that a plaintiff is entitled to three chances to amend. It is plaintiff's burden to show how the defects in the complaint would be cured with an amendment. (*Aguilera v. Heiman*, *supra*, 174 Cal.App.4th at p. 595.) "The onus is on the *plaintiff* to articulate the 'specifi[c] ways' to cure the identified defect, and absent such an articulation, a trial or appellate court may grant leave to amend 'only if a potentially effective amendment [is] both apparent and consistent with the plaintiff's theory of the case.' " (*Shaeffer v. Califia Farms, LLC*. (2020) 44 Cal.App.5th 1125, 1145.)

Plaintiff argues that the court abused its discretion in denying his request for discovery of CSAA's "Injury Illness Prevention Program." He argues that the requested material "will prove the lack of compliance by the respondent and support the motive for [his] cause of action regarding [CSAA's] retaliatory actions against [him]." However, even if plaintiff was improperly denied discovery of this material—which we do not hold—he fails to explain and we do not see how that material would remedy the defects in

8

the complaint as detailed above. Thus, the asserted denial of discovery provides no reason for granting the right to further amend the pleading.[4]

### 3. *Interference with Prospective Business Advantage*

"The tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract." (*Pacific Gas & Electric Co. v. Bear Stearns & Co., supra*, 50 Cal.3d at p. 1126.) To establish the tort of interference with prospective economic advantage, plaintiff must prove: " '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' " (*Id.* at p. 1126, fn. 2.) As with a claim for interference with an at will contract, "a plaintiff seeking to recover damages for interference with prospective economic advantage must plead as an element of the claim that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.' " (*Ixchel Pharma, LLC v. Biogen, Inc., supra*, 9 Cal.5th at p. 1142.)

Again, plaintiff's complaint alleges the elements of the tort in only the most conclusory way. The complaint fails to allege with any specificity facts demonstrating the existence of an economic relationship between the plaintiff and a third party regarding the CalCris prototype. The allegation that the

---

[4] Plaintiff's request for judicial notice of the trial court's "Alternative Discovery Facilitation process" and documents relating to a discovery dispute in the trial court is denied.

9

task force provided "substantial information and resources to develop the [CalCris] concept" is insufficient. Likewise, no facts are alleged to show how CSAA intentionally or negligently disrupted that relationship. Plaintiff's speculation that CSAA used the influence of its employee, as a task force member, "to intimidate and pressure the new task force Chief of Staff . . . into rescinding staff support" for the CalCris product lacks specificity and is insufficient. For the reasons discussed above, the court did not abuse its discretion in sustaining the demurrer without leave to amend.

## Disposition

The judgment is affirmed.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

10