[No. D014386. Fourth Dist., Div. One. Feb. 11, 1992.]

SCECORP et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
TUCSON ELECTRIC POWER COMPANY, Real Party in Interest.

**COUNSEL**

Munger, Tolles & Olson, Mark B. Helm, Stephen E. Pickett, Lorenz, Alhadeff, Lundin & Oggle and Stephen P. Oggle for Petitioners.

No appearance for Respondent.

Leboeuf, Lamb, Leiby & Macrae, Dean Hansell, Gray, Cary, Ames & Frye and David E. Monahan for Real Party in Interest.

OPINION

**WORK, Acting P. J.**—This case arises out of an agreement of merger between San Diego Gas & Electric Company (SDG&E) and Tucson Electric Power Company (Tucson) which was entered into on June 11, 1988. Tucson alleges this merger was not effected because of tortious interference by SCEcorp and Southern California Edison Company (SCE). In its amended complaint against SCE, Tucson states three causes of action arising out of the alleged actions by SCE: (1) intentional interference with contractual relations, (2) negligent interference with contractual relations, and (3) intentional interference with prospective economic advantage. SCE filed a demurrer to these causes of action, claiming that, as a matter of law, no such claims can be made because the merger was subject to regulatory approval and no such approval had been received at the time of its alleged interference. We disagree with SCE's position, and accordingly we deny its petition for peremptory writs of mandate, prohibition, and review.

ISSUE

As a matter of law, should a cause of action be denied for tortious interference with a merger agreement between two energy utility companies where regulatory approval is a condition precedent to completion of the merger?

FACTUAL AND PROCEDURAL BACKGROUND

Tucson and SDG&E entered into a written merger agreement on June 11, 1988 (Merger Contract). One of the conditions precedent to the closing of the merger transaction was the condition that all "governmental consents and approvals necessary for consummation of the Merger and the transactions contemplated hereby, including, without limitation, approval (if required) by the ACC, CPUC, NRC, FERC and the SEC, shall have been obtained on terms reasonably satisfactory to [SDG&E and Tucson]." Thus, in particular, approval of the merger was required from the California Public Utilities Commission, the Arizona Corporation Commission, and the Federal Energy Regulatory Commission. The Merger Contract was duly approved by the respective boards of directors of Tucson and SDG&E. However, before

Tucson and SDG&E were able to fully pursue the required regulatory approvals, SCE, as Tucson alleges, wrongfully interfered with the Merger Contract, causing abandonment of the proposed merger in late 1988. Tucson claims such interference by SCE included, among other things, making an unsolicited offer for SDG&E, improperly acquiring SDG&E shares, and improperly inducing members of SDG&E's board of directors and management to abandon the proposed merger with Tucson.

On September 5, 1990, Tucson filed a complaint against SCE stating causes of action for intentional and negligent interference with the Merger Contract and intentional interference with Tucson's prospective economic advantage. The complaint was subsequently amended to add a fourth cause of action for intentional interference with prospective economic advantage on behalf of the class of persons holding Tucson common stock on July 25, 1988.

SCE demurred to all four causes of action. At a hearing on SCE's motion, Judge Hollywood, in his law and motion capacity, sustained SCE's demurrer with leave to amend, and the case was subsequently assigned to an independent calendar judge, Judge Hamrick. Tucson filed a second amended complaint stating essentially the same causes of action as before. SCE demurred to the second amended complaint. The trial court issued a telephonic ruling on April 5, 1991, overruling the demurrer as to the first three causes of action, but sustaining without leave to amend the demurrer as to the fourth cause of action by the class of shareholders.[1] After oral argument on April 26, 1991, the trial court affirmed its telephonic ruling.

SCE subsequently filed with this court a petition for peremptory writs of mandate, prohibition, and review asking that the court's order of April 26, 1991, overruling its demurrer to the first three causes of action be set aside and asking that we order the court to sustain its demurrers without leave to amend and to enter judgment in favor of SCE. We summarily denied SCE's petition. SCE then filed a petition with the California Supreme Court for review of our decision, and, on September 4, 1991, the Supreme Court granted SCE's petition for review and transferred the matter back to this court with directions to vacate our order denying mandate and to issue an alternative writ to be heard before this court. Such an alternative writ was issued by this court on September 5, 1991.

---

[1]The trial court's ruling regarding the fourth cause of action is not disputed by the parties in this immediate matter and accordingly will not be discussed further.

## ANALYSIS

### Standard of Review

■ A demurrer raises only a question of law, as the allegations of fact contained in the complaint must be accepted as true by the court for purposes of review. (*Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 722 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Noguera* v. *North Monterey County Unified Sch. Dist.* (1980) 106 Cal.App.3d 64, 66 [164 Cal.Rptr. 808].) Furthermore, written instruments, such as the Merger Contract, which are the foundations of the causes of action and attached to the complaint as exhibits may also be examined by the court. (*Weitzenkorn* v. *Lesser* (1953) 40 Cal.2d 778, 785-786 [256 P.2d 947].) Accordingly, for purposes of our opinion we will assume the facts are as alleged in Tucson's complaint and will consider the exhibits to the complaint, including the Merger Contract, to be valid and subject to our review.

### General Principles of Tortious Interference

The first cause of action asserted by Tucson is intentional interference with contractual relations. California law has recognized the tort of intentional interference with contractual relations since *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33 [112 P.2d 631]. Our Supreme Court recently restated the elements necessary to plead a cause of action for intentional interference with contractual relations, as follows: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587].

The second cause of action asserted by Tucson is negligent interference with contractual relations. For purposes of this opinion, we consider this cause of action to be included within the broad cause of action of negligent interference with prospective economic advantage which was discussed and recognized by the Supreme Court in *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60]. Since neither party has specifically addressed this cause of action, we will refrain from discussing the elements of this claim as established in *J'Aire*.

The third cause of action asserted by Tucson is intentional interference with prospective economic advantage. The elements of this cause of action are similar to the elements of intentional interference with contractual

relations, except that a binding contract is not required. (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.*, *supra*, 50 Cal.3d at p. 1126; *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 823, 826-827 [122 Cal.Rptr. 745, 537 P.2d 865].)

For purposes of convenience, we will refer to these three causes of action generally as tortious interference claims.

*Effect of Condition Precedent of Regulatory Approval Upon Tortious Interference Causes of Action*

 The sole issue in this case is whether the existence of regulatory approval as a condition precedent to completion of the merger pursuant to the Merger Contract must, as a matter of law, deprive Tucson of its three causes of action for tortious interference. We hold that it does not and that Tucson has not failed to state causes of action as a matter of law.

We have found no California case which is dispositive of this issue. Therefore, we consider this issue to be one of first impression.

 We begin our analysis by recognizing that the contractual relationship of parties to a merger agreement is clearly within the mainstream of protection under tortious interference principles. There is no question that, absent regulatory approval requirements, valid causes of action may exist for tortious interference with a merger agreement.

As to the effect of regulatory approval requirements, it is our conclusion that tortious interference claims involving mergers should not be given wholly disparate treatment depending upon whether a merger is conditioned upon regulatory approval. Despite concerns expressed by SCE that allowing such claims would result in long trials requiring difficult proofs of fact, we do not believe that such claims would be unduly speculative or contrary to public policy. The prevailing reason for allowing such tortious interference claims is the general principle that the rights of contracting parties should be protected from wrongful interference by third parties. (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.*, *supra*, 50 Cal.3d at p. 1127; Prosser & Keeton, Torts (5th ed. 1984) § 129, p. 978.)

 SCE argues that case law requires us to deny Tucson's claims because of the regulatory approval requirement for completion of the merger under the Merger Contract. SCE cites language from *A-Mark Coin Co.* v. *General Mills, Inc.* (1983) 148 Cal.App.3d 312, 321 [195 Cal.Rptr. 859], wherein the court stated:

"The concept that a contract subject to court approval or other governmental confirmation, and not yet approved or confirmed, is not sufficient to support a claim of tortious interference with contract has been recognized in several cases."

However, we decline to follow this broad statement in *A-Mark* for a number of reasons. Most significantly, *A-Mark* involved a situation in which a probate court had declared a contract void *ab initio*. Thus, there was no contract upon which to make a claim of tortious interference. In contrast, our situation involves a valid, binding contract which was in full force and effect at the time of the alleged interference. Also, *A-Mark* dealt with approval by a probate court as a condition to performance of the contract, and no regulatory agency was involved. Finally, the cases cited in the *A-Mark* opinion as support for the court's statement do not appear to require the inclusion of "other governmental confirmation" in that court's purported general rule. Accordingly, we consider this statement in *A-Mark* to be dictum with respect to our situation and decline to follow the proposed principle suggested by that statement.

SCE also suggests that *Blank* v. *Kirwan* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58] (involving the denial by a city of a poker club license), supports its proposed rule that contracts subject to regulatory approval should not have the same tortious interference protections as other contracts. In *Blank*, the court concluded the plaintiff failed to adequately allege one element of its claim. However, the court went on to state that the tort of intentional interference with prospective economic advantage "has traditionally protected the expectancies involved in ordinary commercial dealings—not the 'expectancies,' whatever they may be, involved in the governmental licensing process." (*Id.* at p. 330.) The court held that the plaintiff, as an applicant for a poker club license, cannot plead any protectible "expectancy" in light of the city council's discretion to grant or deny such applications. We distinguish this case on the following grounds. First, the case primarily involved Cartwright Act claims. Second, the plaintiff had no valid contract which was interfered with by the defendant. Third, the discretion of a city council in issuing a poker club license is probably greater, and is of a different nature, than the regulatory approvals involved with respect to the Merger Contract in this case. Finally, a poker club license application is not an "ordinary commercial dealing" unlike a merger agreement of two energy companies. We believe Tucson had sufficient "expectancies" arising out of its Merger Contract which would support its tortious interference claims. Regardless, the question of sufficient "expectancies" in this case is ultimately a question of fact to be addressed by the trier of fact during the proceedings in this case and cannot be decided as a matter of law.

Tucson, on the other hand, cites *Jewel Companies* v. *Pay Less Drug Stores Northwest* (9th Cir. 1984) 741 F.2d 1555, in support of its position that

regulatory approval requirements should not prohibit a tortious interference cause of action in a merger context. The court in *Jewel* reversed the trial court's holding that the merger agreement was not a valid and binding contract, because it required shareholder approval and the directors could not bind the corporation to an exclusive merger agreement. We consider the *Jewel* decision to be particularly relevant because it involved factual circumstances similar to the case at hand. The court in *Jewel* specifically addressed the issue of the condition precedent of shareholder approval for completion of the merger and stated that such a condition would not prevent the merger agreement from being a valid, binding contract. Implicitly, the court also must have determined that such a condition precedent would not prevent the plaintiff from stating a valid cause of action for tortious interference with the merger agreement. More importantly, the court acknowledged that the "obligation of each firm to close the transaction was also contingent upon Jewel obtaining the required governmental consents." (*Id.* at p. 1558.) Accordingly, the fact that the merger agreement was subject to certain regulatory approvals did not affect the court's determination the plaintiff could state a valid cause of action for tortious interference with the merger agreement. Although the *Jewel* opinion does not specify the exact nature of those regulatory approvals, we see no compelling reason that approvals by utility regulatory agencies should necessarily be treated differently from other regulatory approvals for purposes of stating a cause of action for tortious interference with a merger agreement. Therefore, the *Jewel* decision is consistent with and supports our holding that the regulatory approvals required pursuant to the Merger Contract do not prevent Tucson from asserting valid causes of action against SCE for tortious interference with the Merger Contract.

Cases from other jurisdictions support our decision that Tucson should have valid causes of action for tortious interference. In *Mid-Continent Telephone Corp.* v. *Home Telephone Co.* (N.D.Miss. 1970) 319 F.Supp. 1176, the court applied Mississippi law and entered a judgment for compensatory and punitive damages against a third party who intentionally interfered with a merger contract between two telephone companies. There were a number of conditions precedent to consummation of the merger, including "obtaining requisite approval from regulatory authorities." (*Id.* at p. 1190.) Although the exact nature of the regulatory approvals was not specified, we see no reason to treat a merger of energy companies any differently than a merger of telephone companies. Both mergers are of public utilities and are subject to certain regulatory approvals. Therefore, the *Mid-Continent* case is consistent with our holding in this case.

Similarly, in a much publicized decision, a Texas court applied New York law in upholding awards of compensatory damages and punitive damages,

albeit in a reduced amount, against a third party that intentionally interfered with a stock purchase-merger agreement between two oil companies. In *Texaco, Inc.* v. *Pennzoil, Co.* (Tex.Ct.App. 1987) 729 S.W.2d 768, the existence of certain conditions precedent to consummation of the transaction did not prevent the court from upholding the finding of tortious interference. Although *Texaco* did not involve public utilities or, apparently, any substantive regulatory approvals, the facts in *Texaco* were not unlike those in this case. Both cases involve valid contracts to combine two large companies in the energy industry and which are subject to certain conditions precedent. We conclude that a condition precedent of regulatory approvals should not result in different treatment of Tucson's claims.

The Merger Contract is just one type of contract subject to conditions precedent. It is well established that contracts subject to conditions precedent can be the basis for tortious interference claims. (Prosser & Keeton, Torts, *supra*, § 129, at pp. 995-996; Rest.2d Torts, § 766, com. f.) We see no compelling reason to treat the Merger Contract differently and deny tortious interference claims relating to it when other contracts with conditions precedent are not so adversely treated. Conditions precedent of regulatory approval should be treated no differently than other conditions precedent requiring other third party approvals or actions.

Furthermore, we conclude public policy reasons do not require that Tucson be denied causes of action for tortious interference. SCE asserts that the existence of regulatory approvals as a condition to completion of the merger suggests that third parties, such as SCE, are entitled and even encouraged to intervene in the merger process. SCE may very well be entitled to intervene directly in the regulatory approval process so long as its actions are within the normal parameters of such regulatory procedures. Such action could include appearing before the regulatory agencies during hearings and presenting evidence as to why SCE believes the merger would not be in the public interest or as to other factors which are of legitimate concern to the regulatory agencies. However, independent action taken to interfere with the merger, outside the procedures of regulatory approval, are not condoned by the fact that regulatory approvals are conditions precedent to completion of the merger.

Although we conclude competition between companies that are subject to regulatory oversight, such as SCE and Tucson, should not be without limits, we recognize competition between public utilities should be permitted and encouraged to the extent it is fair and proper competition. In the context of public utilities, we believe fair and proper competition includes appearing before a regulatory agency to present evidence as to the advantages or

disadvantages of a proposed merger of competitors. A major purpose of the regulatory approval process frequently is to determine whether the public interest would be served by a particular transaction, such as a merger of two public utilities. SCE presumably would have been engaging in fair and proper competition had it confined its actions to presenting evidence to the regulatory agencies as to public interest factors regarding the proposed merger between SDG&E and Tucson. Such competition would have been within the proper framework of the regulatory approval process and would have furthered the purpose and intent of such process.

However, action by a competitor outside the framework of the regulatory approval process to prevent a merger should be more limited. In particular, a competitor should not be allowed to subvert the regulatory approval process by taking independent and wrongful action to disrupt a merger of two companies before regulatory agencies have had an opportunity to fully consider the merits of the proposed merger. According to Tucson's complaint, this is the type of wrongful action SCE undertook to disrupt the merger between SDG&E and Tucson. If a competitor objects to a proposed merger, its recourse should be to complain and present evidence to regulatory agencies within the parameters of the regulatory approval process and not to wrongfully interfere with the proposed merger before its full consideration by the regulatory agencies.

Also, public utility mergers may be more susceptible to interference by competitors than other mergers. This is because there generally tends to be much more information available to the public and competitors regarding the transactions and operations of public utilities. Accordingly, if SCE's proposed exception to the general rule of tortious interference were adopted, mergers of public utilities would not only be subject to unrestricted interference by competitors, but also to the greater ability of competitors to interfere because of their greater knowledge about the transactions and operations of the public utilities.

Finally, SCE's proposed exception to the general rule allowing tortious interference claims could lead to an unfair and illogical situation where contracts not requiring regulatory approvals would be protected from interference, but those contracts, such as the Merger Contract, which require regulatory approvals would be unprotected and subject to virtually unrestricted interference by officious intermeddlers. A general principle of tort law is to provide a remedy to a person who is harmed by wrongful action. If there were no cause of action against a noncontracting party who has intentionally and wrongfully acted to disrupt a merger, the harmed party would be deprived of a remedy normally available against wrongdoers. Also,

the principle of protecting contract rights over allowing free competition by third parties would be denigrated if SCE's proposed exception were adopted.[2] Accordingly, we decline to adopt SCE's proposed exception to the general rule allowing tortious interference claims.

Therefore, although Tucson could have difficulty proving at trial that the requisite regulatory approvals would ultimately have been received, we cannot conclude that such proof would be unduly speculative or would be in contravention of any clear and prevailing public policy. Accordingly, we hold that the conditions precedent of regulatory approvals of the merger in this case do not preclude Tucson, as a matter of law, from stating valid causes of action for intentional or negligent interference with contractual relations or intentional interference with prospective economic advantage.

## DISPOSITION

Petition for peremptory writs of mandate, prohibition, and review denied.

Froehlich, J., concurred. Benke, J., concurred in the result.

Petitioners' application for review by the Supreme Court was denied April 23, 1992. Lucas, C. J., did not participate therein. Panelli, J., was of the opinion that the petition should be granted.

---

[2]This principle was discussed by the California Supreme Court in *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d at page 36, and was applied to a merger situation in *Jewel Companies* v. *Pay Less Drug Stores Northwest, supra,* 741 F.2d at pages 1568-1569.