**NGV GAMING, LTD., a Florida partnership, Plaintiff,**

v.

**UPSTREAM POINT MOLATE, LLC, a California limited liability company and Harrah's Operating Company, Inc., a Delaware corporation, Defendants.**

No. C 04–3955–SC.

United States District Court, N.D. California.

Jan. 31, 2005.

Craig A. Caldwell, Porter Scott Weiberg & Delehant, Sacramento, CA, Stephen J. Calvacca, Attorney at Law, West Falmouth, MA, for Plaintiff.

Daniel Q. Poretti, John Juneau Wackman, Stanely E. Siegel, Jr., Rider Bennett, LLP, Minneapolis, MN, Robert H. Zimmerman, Schuering Zimmerman Sculy & Doyle, LLP, Sacramento, CA, for Defendants.

*ORDER DENYING DEFENDANTS'*
*MOTION TO DISMISS*

CONTI, District Judge.

## I. INTRODUCTION

Plaintiff NGV Gaming, Ltd., ("Plaintiff" or "NGV") filed this action against rival casino development groups Upstream Point Molate, LLC and Harrah's Operating Company, Inc. ("Defendants"), alleging that Defendants tortiously interfered with Plaintiff's contract with the Guidiville Band of Pomo Indians ("the Tribe"). Defendants bring the present motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. The Tribe applies to participate as amicus curiae, and urges dismissal of the entire action due to its status as a necessary and indispensable party. This Court grants the Tribe's application to participate as amicus curiae, but does not find the Tribe to be necessary to this action at this time. Moreover, this Court finds that Plaintiff has sufficiently stated a claim, and denies Defendants' motion to dismiss the action.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir.1991) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In reviewing the motion, a court must assume all factual allegations to be true and construe them in the light most favorable to the nonmoving party. *North Star Intern. v. Arizona*

*Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir. 1983). Nevertheless, a complaint must be based on more than "[c]onclusory allegations of law and unwarranted inferences" in order to defeat a motion for dismissal. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998)(*quoting In re VeriFone Sec. Litig.,* 11 F.3d 865, 868 (9th Cir.1993)).

## III. BACKGROUND

Plaintiff's factual allegations must be deemed true and considered in their best light; accordingly, the following represents the facts upon which Plaintiff brings its claim.[1] On July 3, 2002, the Guidiville Band of Pomo Indians entered into a series of contracts (the "Transaction Agreements") with F.E.G.V. Corporation to develop and construct a proposed gaming facility on restored trust land in Northern California. With the Tribe's written consent, F.E.G.V. assigned its interest in these contracts to NGV Gaming, Ltd. on December 23, 2003. The Transaction Agreements consist of the Development Agreement and Personal Property Lease ("Lease") and a Cash Management Agreement ("CMA"). At the time of contracting, the Tribe had not yet acquired any land, and NGV was also obligated under the Transaction Agreements to assist the Tribe in identifying and purchasing land in order to establish the trust land base on which the gaming facility would eventually be built.

In January of 2004, Defendants began negotiating with the City of Richmond to purchase 354 acres of land from the city for the purpose of building a gaming facility. According to Plaintiff, Defendants were aware of the existing contracts between NGV and the Tribe, yet intended to

---

1. On a motion to dismiss under Rule 12, the Court decides based on the pleadings. Fed. R.Civ.P. 12(b)(6). To the extent the parties support their arguments with reference to

points and authorities or other non-evidentiary materials, we will disregard their statements.

put these lands into trust for the Tribe and build a gaming facility for the Tribe to operate.

On August 2, 2004, the Tribe sent a letter to Plaintiff in which it attempted to "rescind" the Transaction Agreements with Plaintiff. Plaintiff maintains that the reasons given for the rescission were "entirely pretextual" and that the Tribe was induced to terminate its agreements with Plaintiff as a result of Defendants' interference. Pl. Opp. at 3.

## IV. DISCUSSION

Defendants rest their motion to dismiss on three grounds: the Transaction Agreements are void and unenforceable, Plaintiff's damages are too speculative to provide a basis for recovery, and this case is completely preempted by Federal law. This Court addresses each of these arguments in turn.

### A. Validity of the Transaction Agreements

First, Defendants argue that Plaintiff's sole claim for tortious interference with contract depends on the validity of the contracts in the first place. Defendants posit that the contracts are invalid, and therefore the entire claim must be dismissed.

■ Under California law, the elements of a cause of action for intentional interference with contract are 1) a valid contract between plaintiff and a third party; 2) defendants' knowledge of the contract; 3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; 4) actual breach or disruption of the contractual relationship; and 5) resulting damage. *See Tuchscher Dev. Enter. Inc. v. San Diego Unified Port Dist.*, 106 Cal.App.4th 1219, 132 Cal.

Rptr.2d 57, 73 (2003). Plaintiff's complaint clearly alleges each of these elements, and is therefore sufficient on its face.

■ Nevertheless, Defendants argue that the Transaction Agreements are invalid for lack of regulatory approval pursuant to the Indian Regulatory Gaming Act, 25 U.S.C. §§ 2701–2721 ("IGRA"), and 25 U.S.C. §§ 81 and 415. The Court finds that this argument rests on a faulty premise, i.e., that no contractual agreement existed between NGV and the Tribe unless and until all regulatory approval required by statute was obtained. It is true that the Transaction Agreements contemplate the necessity for regulatory approval before certain aspects of the Agreements could occur. However, execution of the Agreements may also have created immediate duties and obligations relating to matters for which no regulatory approval is needed.[2]

■ The Agreements themselves do not condition the validity of the contract on regulatory approval, but rather make such approval "conditions precedent" to subsequent obligations of each party under the Lease Agreement. Pl.Ex. A. at 15. In California, a condition precedent is "one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Cal. Civ.Code, § 1436. "Thus, a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *Platt Pacific, Inc. v. Andelson,* 6 Cal.4th 307, 313, 24 Cal.Rptr.2d 597, 862 P.2d 158 (1993). *See also* 1 Witkin, Summary of Cal. Law, Contracts, § 721 (9th ed.1987); Restatement [2d] Contracts

---

**2.** The Transaction Agreements include a "Development Agreement and Personal Property Lease," which creates "Pre–Development" and "Development" Periods, during which land is identified, purchased, transferred into trust and construction commenced.

§§ 224, 225 ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.") However, it is not necessary that each condition in a contract be met before we consider the contract valid and enforceable. Rather,

> [m]ost conditions precedent describe acts or events which must occur before a party is obligated to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself. In the latter situation, no contract arises 'unless and until the condition occurs.'

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon, & Co.,* 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995)(*citing* Calamari & Perillo, Contracts § 11–5, at 440 [3d ed.] ). Accordingly, Plaintiff NGV has alleged the former—that a valid contract existed between NGV and the Tribe—and the contract itself provides a basis for supporting this assertion.

Therefore, even accepting Defendants' contention that the Transaction Agreements never received regulatory approval, which Plaintiff does not dispute, Plaintiffs could prove the existence of a valid contract at the time of the alleged tortious interference, which is the relevant time period for Plaintiff's claim. Inasmuch as Defendants' motion suggests that regulatory approval was not simply a condition precedent to duties and obligations arising under the contract, but indeed a condition of the formation of any valid contract at all, the Court addresses this argument below.

Defendants argue that the Transaction Agreements are void pursuant to a letter written by the Acting General Counsel of the National Indian Gaming Commission ("NIGC"), the regulatory agency established pursuant to IGRA,[3] which expresses the view that the lease provisions of the Transaction Agreements provide NGV with an impermissible "proprietary interest" in the Tribe's gaming activity. Wackman Decl., Ex. 2. This letter in no way renders the Transaction Agreements void.

■ First, under IGRA, only "management contracts" must be preapproved by NIGC to be considered valid,[4] and the NIGC letter explicitly advised that "the Agreements do not constitute a management agreement subject to our review and approval." *Id.* Moreover, the advisory opinion of NIGC's General Counsel that the lease provisions violate IGRA has no legal effect because it is not a final decision of the agency. *See, e.g., Cheyenne–Arapaho Gaming Com'n v. National Indian Gaming Com'n,* 214 F.Supp.2d 1155 (N.D.Okla.2002) (finding that a letter written by the General Counsel of the NIGC was merely advisory and did not constitute official agency action); *see also Sabella v. United States,* 863 F.Supp. 1, 5 (D.D.C.1994)(observing that the General Counsel of a government agency is "not a decision-maker at the highest level and, therefore, her opinion does not create any law or bind the Administrator"). As a result, the NIGC letter cannot in itself invalidate the Transaction Agreements, and it is not the role of this Court to interpret and apply such an opinion to invalidate a contract on a motion to dismiss.

■ Defendants also argue that the Transaction Agreements cannot provide the basis for Plaintiff's claim because they are invalid for lack of regulatory approval by the Bureau of Indian Affairs ("BIA")

---

**3.** *See* 25 U.S.C. § 2704.

**4.** 25 U.S.C. § 2711.

pursuant to 25 U.S.C. § 81(b)(2000). The statute provides:

No agreement or contract with an Indian tribe that encumbers Indian lands for a period of 7 or more years shall be valid unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary.

25 U.S.C. § 81(b). Regulations governing this section counsel that a "contract or agreement that requires Secretarial approval under this part is not valid until the Secretary approves it." 25 C.F.R. § 84.007. On its face, this language supports Defendants' position that a contract is void unless approved by the Secretary. However, the statute itself defines "Indian lands" as "lands the title to which is held by the United States in trust for an Indian tribe or lands the title to which is held by an Indian tribe subject to a restriction by the United States against alienation." 25 U.S.C. 81(a)(1). Plaintiff argues that this definition means that the statute has "no application" in the absence of Indian trust lands. Pl. Opp. at 13. *See also Penobscot Indian Nation v. Key Bank,* 112 F.3d 538, 546 (1st Cir.1997)(holding that a contract involving Indian lands held in fee simple did not require approval under § 81 because the lands were not Indian trust lands). This Court has found no decisions requiring regulatory approval of contracts under § 81 prior to the acquisition of Indian trust lands.[5]

■ Moreover, a court should not grant a motion to dismiss merely if the court believes a plaintiff's claim is legally or factually doubtful, as a case should be tried "on the proofs rather than on the pleadings." *Rennie & Laughlin, Inc. v. Chrysler Corp.,* 242 F.2d 208, 213 (9th Cir.1957). Drawing all inferences in a light most favorable to Plaintiff, the Court finds that Plaintiff may prove that the Transaction Agreements were not void for lack of approval under § 81, since no Indian trust lands were yet acquired.[6]

■ Finally, Defendants would have this Court find the Transaction Agreements void because they were not approved by the Secretary of the Interior pursuant to 25 U.S.C. § 415. Section 415, which requires the Secretary of the Interior to approve any lease of tribal lands to third parties,[7] has been read to require that such approval be obtained *"before* any valid leasing transaction can occur." *See, e.g., Brown v. U.S.,* 86 F.3d 1554, 1562 (Fed.Cir.1996). Because no Indian trust lands had been acquired during the period of time relevant to Plaintiff's claim, no leasing transactions had been instigated. As with § 81, Plaintiff may demonstrate that the Transaction Agreements created a binding contract at the relevant time for

5. Courts are especially reluctant to grant a motion to dismiss when "the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." *Electrical Constr. & Maintenance Co. v. Maeda Pacific Corp.,* 764 F.2d 619, 623 (9th Cir.1985) (*quoting* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1357, at 601–603 (1969)).

6. The Court is aware that Plaintiff has filed affidavits in support of this legal theory; however, the Court has not considered such fil-

ings as it declines to convert this motion to one for summary judgment and instead urges the parties to provide evidentiary support for their positions according to the Federal Rules of Procedure.

7. Plaintiff also argues that the Transaction Agreements would not implicate § 415 because they did not contemplate a lease of tribal land by the Tribe to NGV. Because we decline to grant Defendants' motion on the basis of a lack of approval under § 415, we express no opinion as to the ultimate applicability of § 415 to the Transaction Agreements.

this action and that regulatory approval of the Transaction Agreements under § 415 was not necessary prior to the acquisition of tribal lands.

In conclusion, this Court finds that the lack of regulatory approval of the Transaction Agreements is insufficient to support Defendants' motion to dismiss. Defendants' reliance on the several instances where the BIA or NIGC determined that other similar contracts were invalid is immaterial at this point. Here, the Plaintiff alleges that it never reached the stage where the parties would submit the Agreements for approval, because Defendants' tortious behavior prevented them from reaching that point. The question is simply whether a valid contractual relationship existed at the time of Defendants' alleged interference, and here, Plaintiff has alleged sufficient facts in support of that proposition to defeat a motion to dismiss.

### B. Damages

■ Defendants also premise their motion to dismiss on the grounds that Plaintiff's claim for damages is too remote or speculative, as any profits would be realized only after a casino was successfully approved, constructed and operated. This Court does not agree that damages under a contract subject to regulatory are too speculative to sustain a complaint for interference with that contract. See, e.g., SCEcorp v. Superior Court, 3 Cal.App.4th 673, 4 Cal.Rptr.2d 372 (1992). Plaintiff also contends that the profits to be realized from Indian gaming are demonstrable and readily known. However difficult it might be to prove damages at trial, ultimately this is a question of fact subject to proof, and is inappropriate to support this motion to dismiss.

### C. Preemption

■ Finally, Defendants argue that the IGRA completely preempts Plaintiff's state law claim. Def. Memo. at 22–24. Although the Tribe is not a party to this action, Defendants argue that adjudicating this claim would require this Court to examine the Tribe's relationships with NGV and Defendants, and the internal decision-making process of the Tribe with regard to its termination of the Transaction Agreements. Id. According to Defendants, such an inquiry is outside the scope of this Court's jurisdiction under IGRA. Id.

However, to prevail on a claim for tortious interference with contract under California law, the decision-making process of the party terminating the contract is not necessarily at issue. Rather, Plaintiff must show that Defendants intended to cause a breach or disruption of the contractual relationship, and that a disruption of the contract actually occurred. See Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal.4th 26, 55, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998). Given that Plaintiff could prove tortious interference with contract without implicating the decision-making process of the Tribe, Plaintiff's claim can proceed.

## V. AMICUS CURIAE

■ Finally, we turn to the application of the Guidiville Band of Pomo Indians ("the Tribe") to participate as amicus curiae in this action. The Tribe seeks leave from this Court to file a brief concerning the motion to dismiss. District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." Cobell v. Norton, 246 F.Supp.2d 59, 62 (D.D.C.2003) (quoting Ryan v. Commodity Futures Trading Comm'n, 125 F.3d 1062, 1064 (7th Cir.1997)).

■ While the Tribe has not been named a party in this action, the Court finds it appropriate to consider the Tribe's position because of its involvement in the events leading to this case and its interest in the Transaction Agreements at issue. Accordingly, the Court in its discretion grants the Tribe's application to participate as amicus curiae and has considered its amicus brief, as discussed below. However, the Court also takes this opportunity to remind the Tribe of the limits of amicus participation.

■ Traditionally, an amicus curiae was a non-partisan provider of legal perspective or information to the court, although amicus with partisan interests are now quite common. *Funbus Systems, Inc. v. California Public Utilities Com.*, 801 F.2d 1120, 1124–25 (9th Cir.1986). However, an amicus curiae is not a party and has no control over the litigation and no right to institute any proceedings in it, nor can it file any pleadings or motions in the case. *See, e.g., United States v. Michigan*, 940 F.2d 143, 163–64 (6th Cir.1991) (disapproving of the "legal mutant characterized as 'litigating amicus curiae'" because it impinged on the inherent rights of the real parties in interest). The Tribe may participate as amicus curiae, but its participation is restricted to suggestions relative to matters apparent on the record or to matters of practice. *See Wiggins Bros., Inc. v. Dept. of Energy*, 667 F.2d 77 (Em.App.1981). Motions to file "oppositions" to Plaintiff's briefs, and reference to the Tribe's "pleadings" indicate that the Tribe is attempting to exceed its stated role as amicus curiae. Such motions will not be considered by this Court. The Tribe's participation in this matter does not bind the Tribe to any judgment of this Court, nor is it sufficient to trigger res judicata effect. *U.S. v. Michigan*, 940 F.2d at 165; 47 Am.Jur.2d, Judgments § 668. The only means of acquiring the status or rights of a named party is provided under the Federal Rules of Civil Procedure, including Fed.R.Civ.P. 14 and 17 through 25. *U.S. v. Michigan*, 940 F.2d at 164.

■ Turning now to the Tribe's amicus brief, the Tribe argues that because NGV's claim depends on the validity of the contract between the Tribe and NGV, the Tribe is a necessary and indispensable party to this action under Rule 19. Further, because the Tribe cannot be sued due to its status as a sovereign nation, the Tribe insists that the Court must dismiss this action entirely.

Federal Rule 19 provides for a two-part analysis to determine whether a court must dismiss a case for failure to join an indispensable party. The first step is to determine under Rule 19(a) whether the party is necessary to the action. If the court determines that the absent party is necessary, and cannot be joined, then the court must decide whether the party is "indispensable." If this question is answered in the affirmative, the court must dismiss the suit. Fed.R.Civ.P. 19.

Rule 19(a) provides that a person shall be joined as a party if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's interest may (i) as a practical matter impair or impede the person's ability to protect that interest..." Fed.R.Civ.P. 19(a).

"A Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. The effect a decision may have on the absent party is not material." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993) (citations omitted). This Court finds that complete relief can be afforded in this

action without the Tribe, because Plaintiff seeks only monetary damages from Defendants and does not seek to enforce the provisions or terms of the contract, nor to revive Plaintiff's former relationship with the Tribe or interfere with the Tribe's ongoing relationship with Defendants.

A closer question is whether, if it is determined that a valid contract existed between the Tribe and NGV, that finding would somehow "impede or impair" the Tribe's interests by subjecting it to claims that it breached a valid contract with NGV. However, as noted above, Plaintiff may prevail on its claim without undue examination of the Tribe's rescission of the agreement. Moreover, any judgment rendered against Defendants could not serve as a basis for any claim against the Tribe, as it could have no res judicata effect in such an action, and an invocation of "persuasive precedent" is not enough to trigger the rule that an absent party is necessary. *See Janney,* 11 F.3d at 407 (Possibility of persuasive precedent does not require joinder of absent party under Rule 19(a)(2)(i)). At this stage in the proceedings, the Court declines to find that the Tribe is a necessary party to this action seeking monetary damages from a non-tribal entity for tortious interference with a since-terminated contract.[8]

## VI. CONCLUSION

Plaintiff has stated a claim for tortious interference with contract against Defendants sufficient to defeat a motion to dismiss. Accordingly, Defendants' motion to dismiss under Rule 12 is HEREBY DENIED. In addition, this Court GRANTS the application of the Guidiville Band of Pomo Indians to participate as amicus cu-

riae in accordance with the parameters set out herein.

IT IS SO ORDERED.

---

**8.** Because the Court declines to find the Tribe a necessary party at this time, it does not proceed to the questions of indispensability under Fed.R.Civ.P. 19(b) or the Tribe's immunity from suit.